

# NUMBER 13-09-00438-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE EXMARK MANUFACTURING. CO., INC.

## On Petition for Writ of Mandamus.

# O P I N I O N

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Opinion by Chief Justice Valdez**

Relator, Exmark Manufacturing Co., Inc., filed a petition for writ of mandamus and motion for temporary relief in the above cause on July 28, 2009, challenging an order compelling discovery in a product liability case. By order issued on July 29, 2009, this Court granted the motion for temporary relief and requested a response to be filed by the real parties in interest, Rodolfo Luis Castillo, Jr. and Yadira Ivette Arroyo. Such response has been duly filed by the real parties in interest, and the Court has further received a supplemental record and reply brief from relator. We deny the petition for writ of

mandamus as stated herein.

## I. BACKGROUND

Rodolfo Luis Castillo, Jr. was paralyzed as a result of a "rollover" incident involving a zero-turn riding lawnmower, the Lazer Z HP, designed and manufactured by Exmark Manufacturing Co., Inc. ("Exmark"). Castillo was severely injured when the lawnmower he was riding rolled down an embankment while he was cutting grass in the course of his employment with a landscaping company.

Real parties in interest brought suit against Exmark and others on grounds that the lawnmower was defectively designed, manufactured, and marketed without a rollover protection system.[1] According to real parties, the riding lawnmower "was not adequate for its intended use according to the industry standards at the time it was placed in the stream of commerce," and "a safer alternative design was available," but was not utilized.

Real parties in interest propounded discovery to Exmark in February 2009. By agreement, the parties delayed Exmark's deadline for the formal production of documents until after mediation, which was held on May 14, 2009. Exmark formally responded to the requests for production on June 4, 2009. Real parties filed a motion to compel on June 9, 2009, and the trial court conducted a hearing two weeks later.

At the hearing, the parties and trial court focused on a proposed order furnished by the real parties in interest. The scope of this draft order was substantially narrower than the original requests for production, and, for example, required discovery on only thirty-seven of the eighty-seven requests for production. At the hearing, Exmark's counsel stated on the record that the proposed order "goes a long way towards resolving a lot of our

---

[1] Real parties also brought suit against The Toro Company and Young Men's Christian Association of the Greater Houston Area.

2

issues." He further informed the trial court that, "with this new order, this is something we can work with. We just need a little time to get with our people . . . ." After conceding these points on the record, Exmark offered no evidence regarding any objections or privileges to the proposed discovery order, or any evidence suggesting an alternative scope of discovery, but instead, filed objections to the real parties' proposed order on July 6 and 10, 2009. On July 8, the trial court signed a discovery order submitted by Exmark; however, on July 13, the trial court signed a different discovery order submitted by the real parties in interest. On July 20, upon learning of the conflicting orders, the trial court entered an order extending Exmark's deadline for production by one day. On July 21, 2009, the trial court ultimately issued the order at issue herein, which had been submitted by the real parties in interest. This original proceeding ensued.

Through five issues, Exmark complains that: (1) it should not be compelled to produce documents regarding products that were not used by the injured party and incidents that have no discernible connection to the accident in question; (2) it should not be compelled to produce documents over an unreasonably long time period, including a time period that exceeds ten years prior to the accident in question and, in some cases, pre-dates the date of manufacture for the exact product at issue; (3) the trial court awarded the real parties more relief than was sought in their original discovery requests or in their motion to compel; (4) the trial court improperly restricted the production of documents to one of two manners of production set forth in Texas Rule of Civil Procedure 196.3(c), especially because real parties never asked for such relief in their motion to compel; and (5) the trial court abused its discretion in compelling the production of documents within ten days instead of thirty days.

## II. STANDARD OF REVIEW

3

The scope of discovery is a matter devoted to the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). However, a writ may issue where the trial court's order improperly restricts the scope of discovery as defined by the Texas Rules of Civil Procedure. *See Lindsey v. O'Neill*, 689 S.W.2d 400, 401 (Tex. 1985) (orig. proceeding) (per curiam). Similarly, mandamus relief may be available when the trial court compels production beyond the permissible bounds of discovery. *In re Weekley Homes, L.P.*, No. 08-0836, 2009 Tex. LEXIS 630, at **35-36, 52 Tex. Sup. Ct. J. 1231 (Tex. Aug. 28, 2009) (orig. proceeding); *see In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (orig. proceeding) (concluding that no adequate appellate remedy existed where the trial court ordered overly broad discovery). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding); *see Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding) (noting that a party will not have an adequate remedy by appeal when a trial court's order "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party").

## III. RELATOR'S EVIDENTIARY BURDEN

As an initial matter, we note that Exmark failed to produce any evidence supporting its objections to the discovery requests at issue on grounds of relevance or overbreadth. Exmark argues that it is "not required or necessary [to] produce evidence in support of . . . objections" to discovery.

The party objecting to discovery must present any evidence necessary to support its objections. *See* TEX. R. CIV. P. 193.4(a), 199.6. Evidence is not always required to support an objection or claim of privilege. *In re Union Pacific Resources Co.*, 22 S.W.3d

4

338, 341 (Tex. 1999) (orig. proceeding) (holding that evidence is not required to support an "an assertion relating to discovery when evidence is unnecessary to decide the matter"). For example, when a request is overly broad as a matter of law, the presentation of evidence is unnecessary to decide the matter. *See In re Am. Optical*, 988 S.W.2d at 712; *In re CSX Corp.*, 124 S.W.3d at 153; *In re Union Pac. Res. Co.*, 22 S.W.3d at 341.

Accordingly, there are circumstances where a discovery order might be so overbroad that an objection to the overbreadth is self-evident from the order itself when considered in light of the issues raised in the pleadings. *See, e.g., Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex.1989) (orig. proceeding). However, this is not always the case and is not the case in the matter now before us. *See, e.g., In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999) ("A party resisting discovery . . . cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing. The party must produce some evidence supporting its request for a protective order."); *see also Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987); *Ind. Insul. Glass/Southwest, Inc. v. Street*, 722 S.W.2d 798, 802 (Tex. App.–Fort Worth 1987, writ dism'd). When it is not self-evident that the discovery order is overly broad, the party resisting the discovery bears the burden of offering evidence to prove its objections:

> [W]e conclude that the trial court did not abuse its discretion in ordering the tapes produced because CI Host did not meet its burden to support its objection under our rules of civil procedure governing discovery. To object to a discovery request, the responding party must make a timely objection in writing and "state specifically the legal or factual basis for the objection and the extent to which the party is refusing to comply with the request." TEX. R. CIV. P. 193.2(a). A party is also required under the rules to produce what is discoverable when it asserts that only part of a request is protected. TEX. R. CIV. P. 193.2(b). Any party making an objection or asserting a privilege must present any evidence necessary to support the objection or privilege. TEX. R. CIV. P. 193.4(a) . . . . CI Host had the burden to present evidence supporting its objection, *see* TEX. R. CIV. P. 193.4(a), but did not present any evidence to the court . . . . Thus, in light of CI Host's failure to produce

5

evidence to support its ECPA objection or to segregate and produce the information it has now admitted is not protected by the ECPA, we cannot conclude that the trial court abused its discretion in overruling that objection and ordering the tapes produced.

*In re CI Host, Inc.*, 92 S.W.3d 514, 516-17 (Tex. 2002) (orig. proceeding). This burden has been applied to objections that discovery requests are overly broad or unduly burdensome. *See, e.g., In re Amaya*, 34 S.W.3d 354, 357 (Tex. App.–Waco 2001, orig. proceeding); *Ford Motor Co. v. Ross*, 888 S.W.2d 879, 892 (Tex. App.–Tyler 1994, orig. proceeding); *Chamberlain v. Cherry*, 818 S.W.2d 201, 205 (Tex. App.–Amarillo 1991, orig. proceeding); *Miller v. O'Neil*, 775 S.W.2d 56, 59 (Tex. App.–Houston [1st Dist.] 1989, orig. proceeding); *Mole v. Millard*, 762 S.W.2d 251, 253 (Tex. App.–Houston [1st Dist.] 1988, orig. proceeding); *Ind. Insul. Glass/Southwest*, 722 S.W.2d at 802.

In the instant case, as will be discussed in detail herein, the alleged overbreadth of the trial court's order is not self-evident and the order itself is not overly broad as a matter of law when compared to the issues raised in the pleadings. Accordingly, Exmark had the burden to produce any evidence necessary to support its objections.[2]

## IV. SCOPE OF DISCOVERY REGARDING PRODUCTS

Exmark argues that in "product liability cases, trial courts must limit the scope of discovery to the model of the products at issue in the case." Exmark specifically contends that the trial court's order is impermissibly broad because it "requires Exmark to produce a broad range of documents that have no connection to the Lazer Z HP model zero-turn riding lawnmower at issue." Exmark complains that the order at issue requires the

---

[2] The sole evidence provided by Exmark was the affidavit of Rodney L. Benson, its Engineering Services Manager. The affidavit was attached to Exmark's response to the real parties' motion to compel. In relevant part, Benson stated that the lawn mower at issue herein "has at least 800 component parts," and "[s]ince August 28, 1998, Exmark has manufactured approximately 30 different models of riding lawnmowers per year, for a total of approximately 330 different models of riding lawnmowers. Each different Exmark model of riding lawnmower has its own drawings and diagrams." The affidavit did not provide any further information about Exmark's lawnmowers or further address the issues of relevance or breadth of discovery.

6

production of documents regarding all of its 330 product models[3] with a time limitation of between eleven and thirteen years.

As an initial matter, we note that Exmark devotes a considerable amount of energy and the overwhelming majority of its argument in its petition for writ of mandamus to complaints regarding the scope and breadth of the requests for production, rather than the scope and breadth of the trial court's order compelling discovery. *See generally In re Am. Optical*, 988 S.W.2d at 712-13 ("The requesting party has the responsibility to narrowly tailor its requests to produce."). However, the court's discovery order under review is much narrower in scope than the requests for production, and Exmark's counsel expressly acknowledged as much to the trial court. In this regard, we note that the order at issue was the result of the parties working "extensively" to refine the order from the requests for production.

The relevant query herein is whether the narrower scope of the discovery ordered produced is overbroad and not whether the original requests for production were overbroad, and Exmark has not met its burden with respect to establishing the alleged overbreadth of the information ordered produced. Stated otherwise, our focus in this original proceeding is whether the trial court abused its discretion in entering the order at issue, and we confine our analysis accordingly.

The rules of procedure provide that the scope of discovery includes any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought appears "reasonably calculated to lead to the

---

[3] According to affidavit testimony proffered by Exmark: "Since August 28, 1998, Exmark has manufactured approximately 30 different models of riding lawnmowers per year, for a total of approximately 330 different models of riding lawnmowers." In other words, it appears that Exmark considers each year's model to be a separate product.

discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *see also In re CSX Corp.*, 124

S.W.3d 149, 152 (Tex. 2003) (orig. proceeding). Information is relevant if it tends to make

the existence of a fact that is of consequence to the determination of the action more or

less probable than it would be without the information. TEX. R. EVID. 401. The phrases

"relevant to the subject matter" and "reasonably calculated to lead to admissible evidence"

are liberally construed to allow litigants to obtain the fullest knowledge of the facts and

issues prior to trial. *Axelson v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990); *see also* TEX.

R. CIV. P. 1.

"Generally, the scope of discovery is within the trial court's discretion," but "the trial

court must make an effort to impose reasonable discovery limits." *In re CSX Corp.*, 124

S.W.3d at 152. Thus, because discovery may not be used as a fishing expedition,

discovery requests must be reasonably tailored to include only matters relevant to the

case. *In re CSX Corp.*, 124 S.W.3d at 152; *In re Am. Optical Corp.*, 988 S.W.2d at 713.

A reasonably tailored discovery request is not overbroad merely because it may include

some information of doubtful relevance, and "parties must have some latitude in fashioning

proper discovery requests." *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995).

Exmark complains specifically about the trial court's order pertaining to the following

requests for production:

> Request for Production 14 ("internal memoranda, correspondence or emails regarding the need for or the lack of a need for inclusion of a Rollover Protective Device on a [sic] the Riding Lawnmower"),
>
> Request for Production 15 ("internal memoranda, correspondence or emails regarding the need for or the lack of a need for inclusion of a Rollover Protective Device on a zero turn riding lawnmower"),
>
> Request for Production 17 ("design, drawings or diagrams regarding any Lazer Z HP riding lawnmower manufactured from 1998 to the present"),

8

Request for Production 19 ("prior depositions given by an Exmark employee and/or corporate representative addressing the need or lack of a need for a Rollover Protection Device on any riding lawnmower"),

Request for Production 21 ("all answers to interrogatories in prior cases where Exmark was a Defendant and where it was alleged that a riding lawnmower should have had a Rollover Protection Device"),

Request for Production 23 ("all affidavits signed by an agent or representative employee of Exmark in any way discussing the need or lack of a need for a Rollover Protective Device on a riding lawnmower"),

Request for Production 42 ("guides, directions or warnings that were prepared by or for Exmark identifying the proper installation, repair, removal or replacement of a Rollover Protective Device on the Riding Lawnmower involved in the accident forming the basis of this case and any subsequently manufactured Lazer-Z zero-turn riding lawnmowers"),

Request for Production 43 ("marketing material regarding the Lazer-Z HP and Rollover Protection Devices zero-turn riding lawnmowers from 1998 to the present"),

Request for Production 45 ("tests, studies, research and development materials prepared by Exmark or for Exmark addressing the hazards of or for, need or feasibility of including a Rollover Protective Device on the Lazer-Z zero-turn riding lawnmowers for the period of 1995 to the present"),

Request for Production 49 ("studies, published papers and statistics regarding the injuries and hazards to users of riding lawnmowers who were injured or killed as a result of the lack of a Rollover Protective Device . . . [including] the period of January 1, 1995 to January 1, 2004"),

Request for Production 62 ("any written complaints of injuries to or death of users of Exmark manufactured riding lawnmowers where it was alleged that an injury occurred as a result of the lack of a Rollover Protective Device"), and

Request for Production 63 ("copies of the complaints, petitions or similarly named pleadings in all prior lawsuits against Exmark where it was alleged that a riding lawnmower manufactured by Exmark was defective or unreasonably dangerous due to the lack of a Rollover Protective Device").

The Texas Supreme Court has granted mandamus relief in several product-liability cases when a discovery order covered products "the plaintiff never used." *In re Graco Children's Prods.*, 210 S.W.3d 598, 600-01 (Tex. 2006) (orig. proceeding); *see In re Alford*

9

*Chevrolet-Geo*, 997 S.W.2d at 180 n.1 (providing that a request was overly broad when it sought information on a product different from the allegedly defective product at issue); *In re Am. Optical Corp.*, 988 S.W.2d at 713 (reversing a discovery order regarding respiratory equipment the plaintiffs never alleged they used); *Texaco, Inc.*, 898 S.W.2d at 814 (reversing a discovery order regarding substances to which the plaintiffs never alleged exposure); *Gen. Motors Corp. v. Lawrence*, 651 S.W.2d 732, 734 (Tex. 1983) (reversing a discovery order regarding vehicles without the fuel filler-neck that was allegedly defective); *see also In re Merck & Co.*, 150 S.W.3d 747, 750 (Tex. App.–San Antonio 2004, orig. proceeding) (disallowing discovery on a "pharmaceutical product that the deceased plaintiff never used, that has yet to be sold within the United States, and that has a different chemical structure and patent than the purportedly defective medication at issue"); *In re Sears Roebuck & Co.*, 123 S.W.3d 573, 578 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding) (disallowing discovery of products to which plaintiff was never exposed).

Nevertheless, Exmark's argument misconstrues the scope of allowable discovery under the rules pertaining to discovery and Texas Supreme Court precedent regarding the discovery of safer alternative designs. The following discussion from the supreme court is instructive:

> The trial court limited discovery to knowledge and information based on records pertaining to 1971-77 Vegas and Astres. The trial court was persuaded that other vehicles were not substantially similar to the Jampoles' 1976 Vega Hatchback; therefore, he concluded that tests on those vehicles were not relevant.
>
> Jampole contends that it was a clear abuse of discretion for the trial court to deny discovery of alternate design documents. Jampole argues that the requested documents are relevant to his strict liability claim because they could show the availability and feasibility of safer alternatives. In *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 746 (Tex. 1980), we held that

10

whether a product is defectively designed must be determined in relation to safer alternatives; thus, evidence of the actual use of, or capacity to use, safer alternatives is relevant. *See also Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex. App.–Corpus Christi 1982, writ ref'd n.r.e.). The basic issue in this lawsuit is whether the 1976 Vega hatchback fuel tank design was defective because it allowed fuel to escape. Other designs that may have prevented fuel escaping are relevant to show that the Vega tank was unreasonably dangerous. Furthermore, the documents showing GMC's knowledge of alternative designs are relevant to show conscious indifference in support of Jampole's claim of gross negligence.

The trial court, in balancing the rights of the parties, took an unduly restrictive view of the degree of similarity necessary for tests on other vehicles to be relevant. The automobiles need not be identical in order for tests on one to be relevant in determining whether the design of another is defective. Design differences between vehicles that might prevent certain alternatives from being adapted to the hatchback design do not necessarily undermine the relevance or discoverability of documents relating to those alternatives. Whether a safer fuel system design suitable for one vehicle is adaptable to another is a question of feasibility to be decided by the trier of fact, not a question to be resolved in ruling on discovery requests. Moreover, if it were impossible to incorporate a safer design in the fuel system of a 1976 Vega Hatchback, the existence of that design would be relevant to establish liability for failure to warn. The time period requested is not overly broad, and Jampole has limited his request to include only tests on GMC passenger cars. There being no valid claim of privilege or limitation invoked, the trial court's denial was a clear abuse of discretion.

*Jampole v. Touchy*, 673 S.W.2d 569, 573-574 (Tex. 1984) (disapproved on other grounds by *Walker*, 827 S.W.2d at 843); *see General Motors Corp.*, 651 S.W.2d at 734 (reversing a discovery order pertaining to all vehicles designed, manufactured or sold by General Motors and instead ordering that "[d]iscovery should be limited to records of trucks for model years 1949 through 1972, and should include all impact test results, regardless of the direction of impact").

Fundamentally, the scope of discovery is obviously much broader than the scope of admissible evidence, and evidence of incidents involving other products besides the

11

exact model at issue can be admissible, and therefore, obviously, discoverable.[4]  The

supreme court addressed the narrower issue of admissibility in *Nissan Motor Co. Ltd. v.*

*Armstrong*:

> Other accidents are admissible for some purposes and not for others. For
> example, other accidents may be relevant to show whether:
>
> • a product was unreasonably dangerous;
>
> • a warning should have been given;
>
> • a safer design was available;
>
> • a manufacturer was consciously indifferent toward accidents in a claim for
> exemplary damages.

145 S.W.3d 131, 138-39 (Tex. 2004) (citing *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 258

(Tex. 1999); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 340-41 (Tex. 1998);

*General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993); *Gen. Chem. Corp. v.*

*De La Lastra*, 852 S.W.2d 916, 921-22 (Tex. 1993); *Boatland of Houston, Inc. v. Bailey*,

609 S.W.2d 743, 746 (Tex. 1980)).  Significantly, the *Nissan* court expressly recognized

the admissibility of incidents to show that a safer design was available, citing both the

*Hernandez* and *Boatland* cases.  Indeed, because product liability claimants must prove

a safer "alternative" design, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 82.005, it would be

absurd to limit discovery to the specific model at issue because that would necessarily

preclude discovery on alternative designs.  Moreover, we also note that the similarity of the

products need not be identical, as Exmark seems to argue, because the similarity may be

---

[4] As stated by our sister court of appeals: "[r]elevance should not be confused with admissibility. Admissibility is not required for information to be discoverable."  *In re Pilgrim's Pride Corp.*, 204 S.W.3d 831, 836 (Tex. App.–Texarkana 2006, orig. proceeding) (citing TEX. R. CIV.P. 192.3(a); *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990)).

defined in terms of the defect and any differences among the products may merely go to the weight of the evidence and not its discoverability or admissibility. *See Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082-83 (5th Cir. 1986); *see also Uniroyal Goodrich Tire*, 977 S.W.2d at 341; *Davidson Oil Country Supply, Inc. v. Klockner, Inc.*, 908 F.2d 1238, 1245 (5th Cir. 1990).

We note that many other decisions from courts around the nation reject the notion that discovery in a strict product liability case is uniformly limited to the specific product at issue. *See, e.g.*, *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009) (holding that discovery on other tires was not overbroad where plaintiffs alleged that defendant was aware of tread separation problem); *Brownlow v. General Motors Corp.*, No. 3:05CV-414-R, 2007 U.S. Dist. LEXIS 67973, at *15, (W. D. Ky. 2007) (order) ("Information concerning  prior models of GM U-Vans would remain relevant to issues of defect, notice of defect and GM's possible failure to respond to an alleged defect; whereas, discovery of information related to later models would remain relevant to reasonable alternative designs and their performance."); *Mann ex rel. Akst v. Cooper Tire Co.*, 816 N.Y.S.2d 45, 55 (N. Y. App. Div. 2006) (holding that scope of discovery in tread separation case should include "documents relating generally to the tread separation defect or problem" because otherwise the defendant would not produce "documents probative on the issues of notice, defectiveness and dangerousness"); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 614-16 (D. Kan. 2005) (granting plaintiff's motion to compel the production of information concerning the defendant manufacturer's European version of a child car seat in a lawsuit involving a child car seat manufactured by the same parent corporation in the United States where the discovery was relevant to the feasibility of a safer alternative design); *Herman v. Andrews*, 50 S.W.3d 836, 844 (Mo. App. E. D. 2001)

13

(holding that plaintiffs' request for substantially similar product types was not overbroad, unduly burdensome or oppressive); *Preston v. Montana Eighteenth Judicial Dist. Court, Gallatin County*, 936 P.2d 814, 818-20 (Mont. 1997) (allowing discovery of injuries caused by similar products and discovery about various product models as relevant to whether the design was unreasonably dangerous and whether the defendant was aware of the danger and a viable alternative design); *Calo v. Ahearn*, 522 N.Y.S.2d 555, 556 (N. Y. App. Div. 1 Dept. 1987) ("Although the vehicle type of the automobile involved in the accident was the subject of the recall campaign, it is undisputed that the Ahearn vehicle was not among those listed in the recall. However, it was within the legitimate scope of discovery to attempt to determine if the recall campaign erroneously omitted vehicles with the same or similar steering defects."); *Culligan v. Yamaha Motor Corp., USA*, 110 F.R. D. 122, 124-25 (S. D. N. Y.1986) (holding that information about post-manufacture testing was relevant and discoverable in ATV rollover case even though it dealt with models other than the ATV model at issue in order to show feasibility of alternative designs).

We are especially disinclined to second-guess the trial court in this matter because Exmark's allegation that the discovery could encompass over 300 models of lawnmowers is an argument based on the claim that every model of zero-turn riding lawnmower changed every year of production so, according to Exmark's argument, each model year of every model was a wholly separate and distinct product entirely dissimilar from every other year's production of every model. Yet there is no evidence addressing how model-to-model distinctions regarding fuel tank capacity, comfort features on the riding lawnmower's driver's seat, and the presence or absence of cup holders and storage compartments and similar items could possibly have any bearing on the need or lack of need for a rollover protection system. The real parties in interest argued that Exmark's

14

claims were misleading and disingenuous. In light of this dispute, the trial court's ruling may have reflected some measure of judging the credibility of the arguments, and the trial court is certainly better positioned than the reviewing court to make such credibility determinations.

We conclude that the discovery order at issue here was reasonably tailored to the relevant product defect and was not impermissibly overbroad. *In re SCI Tex. Funeral Servs.*, 236 S.W.3d 759, 761 (Tex. 2007) (orig. proceeding). The order focuses on the production of documents about the inclusion or the lack of rollover protective systems on zero-turn riding lawnmowers and focuses on different models of the same basic product rather than different products. The order at issue is saliently different from the discovery orders that were reversed by the supreme court insofar as, in the instant case, there is a connection between the alleged defect and the discovery ordered. The order compels discovery of documents that are reasonably calculated to lead to the discovery of admissible evidence regarding whether Exmark knew about the necessity for, or defects in, its rollover protective systems. In reaching this conclusion, we note that we do not consider countervailing factors such as the burden, expense, and time needed to produce the proposed discovery given that Exmark did not provide evidence on these issues.

## V. TIME FRAME

Exmark contends that it "should not be compelled to produce documents over an unreasonably long time period, including a time period that exceeds ten years prior to the accident in question and, in some cases, pre-dates the date of manufacture for the exact product at issue." Exmark contends that the trial court's order fails to "limit the requests to the time period in which the Lazer Z HP was manufactured without the Rollover Protection System or the time period (*i.e.*, one day) in which the Plaintiff used the exact

15

lawnmower at issue." Exmark contends that the time limitations of between eleven and thirteen years for some of the requests did not "adequately tailor" the dispute.

A discovery order "requiring document production from an unreasonably long time period" is "impermissibly overbroad and may be subject to mandamus relief." *In re Dana Corp.*, 138 S.W.3d at 301 (quoting *In re CSX Corp.*, 124 S.W.3d at 152).

In the instant case, the lawnmower at issue was manufactured on August 28, 1998, and was shipped on May 11, 1999. Castillo was injured while utilizing the lawnmower on July 31, 2008. The trial court's order generally encompasses periods of time from January 1, 1995 to January 1, 2004, or 1995 to present.

Exmark complains about the time parameter on some of the discovery ordered, but Exmark offered no evidence to give the trial court any useful guidance in evaluating whether one time frame for discovery was comparatively burdensome in contrast to another proposed time frame. We further note that Exmark has cited no authority supporting its proposition that discovery should be limited in temporal scope to the single day that the product caused the injury or the period of time in which the product was manufactured before a different design was implemented.

Many of the requests which Exmark complains about entail documents pertaining to the different versions of Exmark's zero-turn riding lawnmower and different model years of those same zero-turn riding lawnmowers. However, Exmark indicated to the trial court that it only began making the zero-turn riding lawnmowers in 1998. Whether discovery covering this time period through the present is overbroad as a matter of law, or sufficiently tailored to the issues raised in the underlying case, is a question that would need to be answered on a case-by-case basis with some evidence to guide the trial court. While a discovery order that covered a ten-year period might be too broad under some

16

circumstances, there is certainly nothing too broad as a matter of law about all discovery orders covering ten years. *See, e.g., In re Energas Co.*, 63 S.W.3d 50, 55-56 (Tex. App.–Amarillo 2001, orig. proceeding); *Miller*, 775 S.W.2d at 59. In this case, there is simply not sufficient evidence in the record for us to second-guess the scope of the trial court's discovery order.

## VI. MORE RELIEF

Exmark complains the trial court ordered more discovery than was sought by plaintiffs. We agree that a party cannot be compelled to produce, or sanctioned for failing to produce, that which it has not been requested to produce. *See In re Lowe's Companies, Inc.*, 134 S.W.3d 876, 880 n.1 (Tex. App.–Houston [14th Dist.] 2004, orig. proceeding). According to Exmark, the trial court's order compels the production of categories of documents that were not sought in real parties' discovery requests. For ease of reference, portions of the specific requests for production and the complained-of portions of the trial court's order are juxtaposed below:

> Request for Production 14 asks for "[a]ny and all internal documents." The trial court's order requires production of "any and all internal memoranda, correspondence or emails."

> Request for Production 15 asks for "[a]ny and all internal documents, memos or letters." The trial court's order requires production of "any and all internal memoranda, correspondence, or emails."

> Request for Production 17 asks for "[a]ny and all drawings or diagrams." The trial court's order requires production of "any design, drawings, or diagrams."

> Request for Production 42 asks for "[a]ny and all guides, directions or warnings that you have prepared relating to the proper connection of any Rollover Protective Device on riding lawnmowers designed and/or manufactured by you, including any and all of its component parts." The trial court's order states that "Exmark shall produce all guides, directions or warnings that were prepared by or for Exmark identifying the proper installation, repair, removal or replacement of a Rollover Protective Device on the Riding Lawnmower involved in the accident forming the basis of this

17

case and any subsequently manufactured Lazer-Z zero turn riding lawnmowers."

Request for Production 43 asks for "[a]ny and all marketing materials generated by you relating to the Riding Lawnmower and Rollover Protective Devices, including any and all of its component parts." The trial court's order requires production of "all marketing material regarding the Lazer-Z HP and Rollover Protection Devices [sic] zero-turn riding lawnmowers from 1998 to the present."

The rules of civil procedure expressly provide for discovery of documents and tangible things "including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations." *See* TEX. R. CIV. P. 192.3(b). Contrary to Exmark's argument, the trial court's order actually limited the scope of the documents ordered produced by utilizing more specific terminology than utilized in the real parties' original requests for production. Accordingly, this aspect of the trial court's order did not constitute an abuse of discretion.

VII. RESTRICTION OF RELATOR'S "OPTIONS"

Exmark next contends that the trial court's order unreasonably restricts its options and forces it to comply with "requirements that are outside the scope of the Texas Rules of Civil Procedure." The order at issue requires Exmark to "identify each . . . tangible item responsive to each Request for Production or by general categories of documents." According to Exmark, the order compels it to "organize its production in a manner more restrictive than the rules allow" because it eliminated its ability to produce documents and tangible things as they are kept in the normal course of business.

Under Texas Rule of Civil Procedure 196.3(c), "the responding party must either produce documents and tangible things as they are kept in the usual course of business or organize and label them to correspond with the categories in the request." TEX. R. CIV. P. 196.3(c); *see In re Colonial Pipeline*, 968 S.W.2d 938, 942 (Tex. 1998) (orig.

18

proceeding) (holding that this rule does not require the creation of an "inventory" of documents to be produced).

Contrary to Exmark's argument, the rules expressly and explicitly allow for the mode of production specified by the trial court and in fact, the trial court's order is less onerous than authorized by the rules because it allows Exmark to identify each item by "general categories of documents." According to Exmark, the time and expense required to organize and label documents tying them to one or more of the discovery requests prejudices relator as it is both unduly burdensome and contrary to the rules. Significantly, however, Exmark has produced no evidence herein substantiating its claim that the trial court's order is overburdensome or unduly expensive.

Based on the foregoing, we conclude that this aspect of the trial court's order does not represent an abuse of discretion.

## VIII. TIME FOR PRODUCTION

Exmark next contends that the trial court's order implements an unreasonably short time line for compliance because it requires production within ten days from the issuance of the order.

A trial court has discretion to schedule discovery. *In re Colonial Pipeline Co.*, 968 S.W.2d at 943; *see, e.g.*, TEX. R. CIV. P. 190.5, 191.1. Moreover, the rules of civil procedure provide that the trial court may shorten or lengthen the time for making a response for good cause. *See id.* A trial court can, however, abuse its discretion by acting in an unreasonable manner. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). We examine the trial court's order to determine if it is reasonable under the circumstances. *In re Colonial Pipeline Co.*, 968 S.W.2d at 943.

Real parties in interest propounded discovery to Exmark in February 2009. Rule

19

196.2 allows a party fifty days to respond to requests for production if, as was the case here, the requests were served contemporaneously with the petition, or thirty days to respond if the requests are served after an answer has been field. *See* Tex. R. Civ. P. 196.2. By agreement, the parties delayed the deadline for the formal production of documents until after mediation, which was held on May 14, 2009. Exmark formally responded to the requests for production on June 4, 2009. Real parties filed a motion to compel on June 9, 2009, and the trial court conducted a hearing two weeks later, on June 25, 2009.

At the hearing, the parties focused on a draft order furnished by the real parties in interest on June 24, 2009, which required production within thirty days. Relator filed objections to the real parties' proposed order on July 6 and 10, 2009. On July 8, the trial court signed an order submitted by Exmark requiring production within thirty days. On July 13, the trial court signed an order submitted by real parties in interest requiring production within ten days. On July 20, upon learning of the conflicting orders, the trial court entered an order extending the deadline for Exmark's responses by one day. The trial court ultimately issued the order at issue herein on July 21, 2009, which compelled production within ten days. This order was stayed by order of this Court.

Exmark's discovery in this matter was due in June. The motion to compel was filed and heard during the month of June. When the trial court signed Exmark's proffered order on July 8, it required production by August 7, 2009. The order ultimately issued by the trial court required production by July 24, 2009, a difference of two weeks. Based on the foregoing, and in the absence of any evidence regarding the duration of time necessary to respond, we conclude that the trial court's order was reasonable under the circumstances and that it was not an abuse of discretion to require compliance within ten

20

days.

## IX. Conclusion

"Only in certain narrow circumstances is it appropriate to obstruct the search for truth by denying discovery." *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991). The discovery order herein is reasonably tailored to the circumstances of the case and focuses on documents pertaining to the alleged defect, that is, the lack of a rollover protection system on a riding lawnmower, whether Exmark had notice of that alleged defect, Exmark's response to any notice of an alleged defect, any injuries allegedly caused by the lack of a rollover protective device, and reasonable alternative designs and their performance. The information sought is not "patently irrelevant." *In re CSX Corp.*, 124 S.W.3d at 153. The trial court's order was not arbitrary and unreasonable and it did not constitute a clear abuse of discretion.

Accordingly, the Court, having examined and fully considered the petition for writ of mandamus, the response, and the reply thereto, is of the opinion that relator has not shown itself entitled to the relief sought. The stay previously imposed by this Court is LIFTED. *See* Tex. R. App. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). The "Motion to Modify Stay Order" filed by the real parties in interest is DISMISSED as moot. The petition for writ of mandamus is DENIED. *See id.* 52.8(a).

_____
ROGELIO VALDEZ
Chief Justice

Opinion delivered and filed this
the 30th day of October, 2009.

21