

# NUMBER 13-25-00041-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE AGUA SPECIAL UTILITY DISTRICT

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice West[1]**

By petition for writ of mandamus, Agua Special Utility District (Agua) contends that the trial court[2] abused its discretion by: (1) ordering it to engage in discovery on the merits before ruling on its plea to the jurisdiction; and (2) ordering the production of irrelevant project files and financial records. We conditionally grant the petition for writ of mandamus

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number C-3353-20-I in the 398th District Court of Hidalgo County, Texas, and the respondent is the Honorable Keno Vasquez. *See id.* R. 52.2.

in part and deny it in part.

## I.  BACKGROUND

Agua contracted with real party in interest O.G. Construction Company, L.L.C. (OG) and other entities for the construction and installation of the Palmview Wastewater Collection System in Hidalgo County, Texas. The Palmview Wastewater Collection System consisted of a five-phase project to replace septic systems with a regional sewer system. In this regard, OG entered into a contract with Agua whereby OG would install gravity sewer lines on Phase I—Group A&G of the five-phase project. However, the parties' relationship deteriorated, and Agua ultimately terminated OG's contract.

OG subsequently intervened in a pending lawsuit filed against Agua by S&B Infrastructure, Ltd., Agua's engineer on the project. OG asserted that Agua breached its contract, violated the Texas Prompt Payment Act and the Texas Trust Fund Act, and committed ultra vires actions. OG sought recovery in quantum meruit, damages, and injunctive and declaratory relief. OG contended in relevant part that the project was underfunded and Agua reallocated project funds that were intended to be used for contract payments in Phase I rather than pay OG as required under the contract. Agua thereafter filed a counterclaim against OG for breach of contract, alleging that its work on the project was deficient and that OG abandoned the contract.

On August 2, 2024, more than two years after OG intervened in the lawsuit, Agua filed a combined "Plea to the Jurisdiction and Traditional and No Evidence Motion for Partial Summary Judgment" pertaining to OG's claims against it. Agua alleged that it was immune from suit pursuant to § 271.153 of the Texas Local Government Code and it

2

sought "a dismissal or take-nothing judgment as to O.G.'s affirmative claims because each claim fails as a matter of law because of sovereign immunity, common law construction law doctrines, or express contractual terms." *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160 (governing the adjudication of claims arising under written contracts with local governmental entities).

The trial court originally set Agua's combined plea for hearing on September 17, 2024. However, on September 3, 2024, OG filed a motion to continue the hearing to secure additional time for discovery. Over Agua's objections, the trial court deferred hearing on Agua's combined plea to allow discovery. Thereafter, OG filed a motion to compel discovery and Agua filed responsive pleadings thereto. The trial court issued an order granting OG's motion to compel; however, the parties disagreed regarding the interpretation of that order. On October 24, 2024, the trial court signed an amended order granting OG's motion to compel and signed a second amended order granting OG's motion to compel on January 7, 2025.

This original proceeding ensued. Agua filed this petition for writ of mandamus and an opposed amended emergency motion seeking to stay all discovery in the trial court. We granted Agua's opposed amended emergency motion to stay, and we ordered all discovery to be stayed. *See* TEX. R. APP. P. 52.10. We requested and received a response to the petition for writ of mandamus from OG and a reply thereto from Agua.

## II.    STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836,

3

840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

### III.   MERITS DISCOVERY

In its first issue, Agua asserts that the trial court abused its discretion by ordering discovery on the merits of OG's lawsuit before ruling on Agua's plea to the jurisdiction. In contrast, OG contends that Agua's jurisdictional "arguments are intertwined to a significant degree with the facts on the merits," and thus, the trial court did not abuse its discretion in proceeding with discovery.

Generally, a ruling on jurisdiction should be made "as soon as practicable." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). It is a "fundamental precept that a court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided." *Id.* at 228; *see W. Travis Cnty. Pub. Util. Agency v. CCNG Dev. Co.*, 514 S.W.3d 770, 776 (Tex. App.—Austin 2017, no pet.); *see also In re City of Edinburg*, No. 13-23-00131-CV, 2023 WL 3185808, at *4 (Tex. App.—Corpus Christi–Edinburg May 1, 2023, orig. proceeding) (mem. op.). That said, the trial court "should hear evidence as necessary to determine the [jurisdictional] issue before proceeding with the case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "Whether a determination of subject-matter jurisdiction can be made in a

4

preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion." *Id.*; *see County of El Paso v. Aguilar*, 600 S.W.3d 62, 81 (Tex. App.—El Paso 2020, no pet.).

"Consistent with these tenets, several Texas courts of appeals have concluded that a trial court abuses its discretion when it delays ruling on a jurisdictional plea for the purpose of allowing discovery unnecessary to the jurisdictional challenge." *In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One*, No. 04-24-00538-CV, 2025 WL 466069, at *4, __ S.W.3d __, __ (Tex. App.—San Antonio Feb. 12, 2025, orig. proceeding) (collecting cases); *see City of Galveston v. Gray*, 93 S.W.3d 587, 591–92 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding); *see also In re Dallas County*, No. 05-21-01144-CV, 2022 WL 1467987, at *3 (Tex. App.—Dallas May 10, 2022, orig. proceeding) (mem. op.) ("Without any fact-dependent jurisdictional arguments requiring further discovery, the trial court was obligated to hear the pleas to the jurisdiction at the earliest opportunity before considering whether to compel discovery.").

Here, Agua filed a "Plea to the Jurisdiction and Traditional and No Evidence Motion for Partial Summary Judgment." In short, Agua has entwined jurisdictional and merits-based arguments in a single pleading. Because the jurisdictional inquiry is intertwined with the merits, the court's order does not compel any discovery "unnecessary to the jurisdictional challenge." *See In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One*, 2025 WL 466069, at *4, __ S.W.3d at __; *City of Galveston*, 93 S.W.3d at 591–92. We conclude that under the circumstances presented here, the trial court did not abuse its discretion by allowing a fuller development of the merits of the case

before ruling on Agua's combined plea. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *County of El Paso*, 600 S.W.3d at 81. We overrule Agua's first issue.

## IV.   RELEVANCE

In its second issue, Agua contends that the trial court abused its discretion by ordering it to produce irrelevant project files and financial records. In its motion to compel, OG argues, in contrast, that the disputed discovery is relevant and material to its claims:

1)   [OG] sued [Agua] for breach of contract and violations of the Texas Trust Fund Act, among other claims germane to Agua's counterclaim against [OG], alleging that [Agua's] hostile conduct on the Project was intended to place [OG] and the contractors under duress to reduce amounts ultimately due for services rendered, because [Agua] did not have the financial resources with which to pay actual Project costs. [OG] alleges that [Agua] wrongfully terminated [OG] for the same reasons.

2)   [Agua's] former Executive Director, Oscar Cancino, testified in this case that during his tenure at Agua he discovered a $3–$4 million budget shortfall of funds necessary for construction of the Palmview Wastewater Collection System Project (the "**Project**") *mere weeks before [OG] commenced its work in* October 2017. In addition, [OG] has adduced other evidence showing that between 2017 and 2020, the main period of [OG's] performance, [Agua's] finances plummeted due to various malfeasances and mismanagement, though much detail is left unclear due to Agua's refusal to produce material and relevant discovery on this subject.

3)   [Agua] has a duty to produce its Project file. Failure to produce the Project file precludes plaintiff from presenting its case. The Project consists of five component projects, which together constitute the collection system at issue. Each project began at different times. The Project file is relevant because the first four projects, including [OG's], were funded from one pot of money provided by the Texas Water Development Board ("**TWDB**"). The fifth project was funded by a grant from North American Development Bank ("**NAD Bank**"), though Agua did not secure these funds until after [OG's] wrongful termination. The cost of each component project is relevant to enable [OG] to present and explain to the jury [Agua's] overall funding shortfall, because the cost of one phase affected the other, which

6

affected Agua's conduct when payments to contractors were coming due, and so forth.

4) Agua's financial records concerning its own operating and reserve accounts are relevant and must be produced. Agua's Grant Contract with the TWDB makes [Agua] *responsible for all project costs that exceed the TWDB budget*. The TWDB required Agua to maintain a basis level of financial responsibility and cited it for noncompliance with that responsibility during the Project. Because of the shortfall of Project funds and Agua funds, [OG] alleges that Agua's hostile conduct toward it and the other contractors was driven by its need to desperately ration TWDB funds by not paying for properly performed work.

5) Defendant Agua's communications with other entities and individuals it hired to design, inspect, construct, or otherwise oversee the Project are material and relevant to [OG's] claims. As discussed, the Project was made up of smaller projects with similar scopes of work constituting one system. Discovery of communications related to the Project are not outside the scope of discovery.

## A.    Applicable Law

The Texas Rules of Civil Procedure define the scope of discovery as follows:

In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party. It is not a ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

TEX. R. CIV. P. 192.3(a). To determine what is "relevant," we turn our attention to the Texas Rules of Evidence, which explain that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. We evaluate the relevancy of discovery on a case-by-case basis by considering the pleadings and the instrumentality of the alleged injury. *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex.

7

App.—Houston [14th Dist.] 2018, orig. proceeding); *see In re Plains Pipeline, L.P.*, 618 S.W.3d 780, 790 (Tex. App.—El Paso 2020, orig. proceeding).

The scope of discovery is generally within the trial court's discretion. *In re UPS Ground Freight, Inc.*, 646 S.W.3d 828, 831 (Tex. 2022) (orig. proceeding) (per curiam); *In re Cent. Or. Truck Co.*, 644 S.W.3d 668, 671 (Tex. 2022) (orig. proceeding) (per curiam). "Because the purpose of discovery is to enable courts to decide disputes based on what the facts reveal, not by what facts are concealed, the rules must be liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 248 (Tex. 2021) (orig. proceeding) (cleaned up).

Nevertheless, "[a] discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Kuraray Am., Inc.*, 656 S.W.3d 137, 142 (Tex. 2022) (orig. proceeding) (per curiam) (quoting *In re Nat'l Lloyds Ins.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam)). In this regard, "discovery requests and orders are overbroad if they are not properly tailored with regard to time, place, or subject matter, or otherwise require production of information that is not reasonably calculated to lead to the discovery of admissible evidence." *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 252 (cleaned up). Therefore, discovery requests that are overbroad and seek the production of irrelevant matters constitute impermissible "fishing expeditions," and an order requiring production in response to such requests constitutes an abuse of discretion. *In re UPS Ground*

8

*Freight, Inc.*, 646 S.W.3d at 832; *In re Contract Freighters, Inc.*, 646 S.W.3d 810, 814 (Tex. 2022) (orig. proceeding) (per curiam).

**B.      Burdensomeness**

Agua asserts that some of the requests for production at issue "are unduly burdensome and harassing." Texas Rule of Civil Procedure 192.4 provides that discovery is subject to a "proportionality overlay." *See In re State Farm Mut. Auto. Ins.*, 712 S.W.3d 53, 67 (Tex. 2025) (orig. proceeding) (quoting *In re State Farm Lloyds*, 520 S.W.3d 595, 599 (Tex. 2017) (orig. proceeding)). Under Rule 192.4, discovery methods "should" be limited if (1) "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," or (2) "the burden or expense of the proposed discovery outweighs its likely benefit." TEX. R. CIV. P. 192.4. "These proportionality complaints are determined on a case-by-case basis and must be supported with evidence, not conclusory allegations." *See In re State Farm Mut. Auto. Ins.*, 712 S.W.3d at 67–68.

Agua did not present evidence in support of its contention that any of the requests for production were unduly burdensome or harassing. Accordingly, Agua has not established that the trial court abused its discretion in this regard. *See id.*; *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 253; *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 792 (Tex. 2021) (orig. proceeding).

**C.      Definitions for Requests for Production**

The requests for production contained several definitions of import to the issues in this original proceeding. In its requests for production, OG defined the term "Project" to

"mean the design and/or construction of the Phase-I, Group-A&G of the Palmview Wastewater Collection System." OG served as the contractor for this Project, also known as Project 2. The terms "Palmview Wastewater Collection System Project" or "Entire System" are defined to "mean the design and/or construction of" Projects 1 through 5, which "connect and comprise the entire Palmview Wastewater Collection System."

Agua contends, in part, that the trial court ordered it "to produce documents for the entirety of the larger project when [OG's] actual requests were limited to portions of the project on which [OG] worked," and the trial court did so regarding request for production numbers 18, 44, 45, 47, 48, 86, 91, 92, and 97. OG's requests for production differentiate between requests pertaining to the specific Project on which it worked and requests regarding the Entire System, and in contrast, OG's motion to compel discovery broadly asserts that OG is entitled to discovery regarding the Entire System. We agree with Agua that there is a disconnect between OG's requests for production and its motion to compel discovery. In this regard, "[a] party cannot be compelled to produce that . . . which it has not been requested to produce." *In re Exmark Mfg. Co.*, 299 S.W.3d 519, 531 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding [mand. dism'd]). However, the trial court's January 7, 2025 order grants in whole or in part the specific requests for production that were propounded by OG and does not on its face expand or rewrite those discovery requests. If it did otherwise, it would be in error. *See id.* We review the requests and rulings thereon accordingly.

10

## D.    Separate Project Files and Communications

Agua asserts that "even where plaintiffs allege an overarching scheme, discovery into distinct breaches of contract or torts against non-parties constitutes a fishing expedition." Agua thus asserts that discovery regarding separate contracts and communications with third-party contractors is not probative of any alleged breach by Agua and instead constitutes a prohibited fishing expedition. In contrast, OG contends that the discovery at issue "targets documents and communications relevant to Agua's knowledge of its financial shortfall, its interference with contractor payments, and its rationale for termination—all central to [OG's] fraud and bad faith claims." OG explains that "the materials at issue here are essential to establish motive, pretext, financial mismanagement of funds for the project and Agua's bad faith, all of which are pled with specificity."

In terms of this general subject matter, Agua specifically complains that the trial court erred in compelling it to produce documents in response to the following requests for production:

> **REQUEST FOR PRODUCTION NO. 12:** Produce all communications between you and Mor-Wil, LLC related to the Palmview Wastewater Collection System Project.

> **REQUEST FOR PRODUCTION NO. 13:** Produce all communications between you and Saenz Brothers Construction, LLC related to the Palmview Wastewater Collection System Project.

> **REQUEST FOR PRODUCTION NO. 56:** Produce all communications between you and Mor-Wil, LLC related to the PROJECT 5: NADBank Palmview Yard Kline Project (Hook-Up Project).

11

**REQUEST FOR PRODUCTION NO. 57:** Produce all communications between you and Mor-Wil, LLC related to the PROJECT 4: Main Lift Station and Forcemain Conveyance System.

**REQUEST FOR PRODUCTION NO. 58:** Produce all communications between you and Jimmy Closner & Sons Construction Co., Inc., related to the Project-2 GROUP A&G and/or [OG].

**REQUEST FOR PRODUCTION NO. 59:** Produce all communications between you and Jimmy Closner & Sons Construction Co., Inc., related to PROJECT-3: Lift Stations A2, F, G & G7.

**REQUEST FOR PRODUCTION NO. 61:** Produce all communications between you and Southern Trenchless Solutions, LLC related to the Palmview Wastewater Collection System.

**REQUEST FOR PRODUCTION NO. 64:** Produce all communications between you and . . . Eddie Saenz referencing O.G. Construction.

**REQUEST FOR PRODUCTION NO. 67**: Produce all communications between you and M2 Engineering referencing [OG].

**REQUEST FOR PRODUCTION NO. 88:** Produce all documents, including payments, exchanged between you and Performance Services, Inc.

**REQUEST FOR PRODUCTION No. 90:** Produce all letters of non-compliance issued to you from any government agency between 2016 and the present.

**REQUEST FOR PRODUCTION NO. 93:** To the extent not produced, produce all project files for Projects 1-5 made part of the Entire System.

**REQUEST FOR PRODUCTION NO. 95:** To the extent not produced, produce all project files for Projects 1-5 made part of the Entire System, including all communications with the respective contractors.

As stated previously, OG served as the contractor for Phase I-Group A&G, otherwise known as Project 2. Request for production numbers 12, 56, 57, and 59 seek Agua's communications with the contractors on the other four projects regarding either those specific projects or the Entire Project. Request for production number 13 seeks

communications with Saenz Brothers Construction, LLC, a failed bidder for OG's contract, related to the Entire System. Request for production numbers 93 and 95 request the project files and communications for the Entire System. Request for production number 88 requests any documents that Agua exchanged with Performance Services, Inc., a contractor unrelated to the Entire System.

Examining the pleadings, we observe that OG has sued Agua for breach of contract and claims relating to the breach of its contract, and Agua has filed similar counterclaims against OG. While OG is entitled to discover matters pertaining to the breach of its contract, OG has not demonstrated how requests for information concerning separate contracts, and communications regarding those separate contracts, bear any relationship to its case. *See In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 225 (Tex. 2016) (orig. proceeding) (per curiam) (rejecting the contention that discovery "unrelated to the insurance event at issue" was relevant to show that relator "had knowledge of its own misdeeds and a pattern and practice to defraud its insureds"); *In re Nat'l Lloyds Ins.*, 449 S.W.3d at 487, 489 (concluding that the overpayment, underpayment, or proper payment of the claims of unrelated third parties was not relevant to the claim at issue "given the many variables associated with a particular claim"); *In re Mem'l Hermann Health Sys.*, 607 S.W.3d 913, 920 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) ("Reimbursement rates concerning services not received by Poole are not relevant to the determination of whether MHHS's charges for the services received by Poole are reasonable."); *see also In re Bilfinger Westcon, Inc.*, No. 13-19-00466-CV, 2019 WL 6795870, at *8 (Tex. App.—Corpus Christi–Edinburg Dec. 12, 2019, orig. proceeding

[mand. denied]) (mem. op.) ("Some of the requests for production seek the production of documents pertaining to all of relator's contracts, projects, and assignments, other than the one at issue in this lawsuit, without limitation. These requests are overbroad.").

Accordingly, we agree with Agua that request for production numbers 12, 13, 56, 57, 59, 88, 93, and 95 lack relevance to the instant breach of contract case. *See In re Nat'l Lloyds Ins.*, 507 S.W.3d at 225; *In re Nat'l Lloyds Ins.*, 449 S.W.3d at 489; *In re Mem'l Hermann Health Sys.*, 607 S.W.3d at 920; *see also In re Bilfinger Westcon, Inc.*, 2019 WL 6795870, at *8.

We reach a different conclusion regarding the remaining requests for production referenced above. Request for production numbers 58, 64, and 67 seek communications specifically pertaining to OG between Agua and a separate contractor (number 58), between Agua and an employee of Agua (number 64), and between Agua and an engineer on the Entire System (number 67). Request for production number 61 seeks Agua's communications with Southern Trenchless Solutions, LLC, which in relevant part inspected OG's performance under the contract. We conclude that these requests are limited in scope and are reasonably calculated to lead to the discovery of admissible evidence regarding the alleged breaches of contract in this lawsuit. *See* Tex. R. Civ. P. 192.3(a); *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 248.

### E.     Financial Records Unrelated To Payments To OG

Agua contends that OG's requests for financial records that are unrelated to payments for OG's work constitute fishing expeditions. Agua specifically complains about

14

the following requests for production and the trial court's rulings thereon, which we have summarized below:

> **REQUEST FOR PRODUCTION NO. 71:** Produce all supporting documents, including communications, exchanged between you and your accounts [sic] concerning your finances for the fiscal years 2017–2022 in connection with any independent auditor's report.
>
> Granted.
>
> **REQUEST FOR PRODUCTION NO. 72:** Produce profit and loss statements, trial balance reports, balance sheets, general ledgers, book of accounts, financial statements and other supporting documents for your accounting for the fiscal years 2017–2022.
>
> Granted; however, Agua "shall only be required to produce responsive documents related to the use or transfer of construction or project funds utilized for the Palmview Wastewater Collection System by December 2, 2024."
>
> **REQUEST FOR PRODUCTION NO 75:** Produce complete unredacted statements of any accounts for your cash on hand, operating, and reserve for operations for the fiscal years 2018 and 2020.
>
> Granted; however, Agua "shall only be required to produce all unredacted statements of any accounts containing construction funds for the Palmview Wastewater Collection System for the years 2018 to 2020 by December 2, 2024."
>
> **REQUEST FOR PRODUCTION NO. 76:** Produce any documents or electronic transmissions reflecting transfers of funds from the construction account for the Project to any other account over which you maintain control.
>
> Granted.
>
> **REQUEST FOR PRODUCTION NO. 79:** Produce all documents reflecting payments to Armin Garza.
>
> Granted; however, Agua "shall only be required to produce all documents reflecting payments to Armin Garza if such payments were related to the Palmview Wastewater Collection System, by December 2, 2024."

15

**REQUEST FOR PRODUCTION NO. 80:** Produce all documents reflecting payments to Oscar "Coach" Salinas.

Granted; however, Agua "shall only be required to produce all documents reflecting payments to Oscar "Coach" Salinas if such payments were related to the Palmview Wastewater Collection System, by December 2, 2024."

**REQUEST FOR PRODUCTION NO 83:** Produce communications with North American Development Bank related to the Project.

Granted.

Armin Garza and Oscar "Coach" Salinas were employees of Agua who were given severance packages. North American Development Bank funded a separate project, Project 5, after OG was terminated.

OG asserts, in relevant part, that Agua accused it of breaching the contract to avoid paying it rather than admitting that it lacked funds for payment because Agua's Entire System was underfunded. Accordingly, we conclude that the trial court's order compelling responses to the foregoing requests for production, as limited by the trial court, was not an abuse of discretion. *See* TEX. R. CIV. P. 192.3(a); *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 248. We overrule Agua's assertions otherwise.

**F.      Summary**

We sustain in part and overrule in part Agua's second issue as specifically discussed above.

## V.      CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, OG's response, Agua's reply, the record, and the applicable law, is of the opinion that OG has met its burden to obtain mandamus relief, in part, as discussed herein. Accordingly,

16

we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10. We conditionally grant the petition for writ of mandamus as to request for production numbers 12, 13, 56, 57, 59, 88, 93, and 95. We deny the petition for writ of mandamus, in part, as to the remaining matters raised in this original proceeding. We direct the trial court to vacate that part of its order pertaining to request for production numbers 12, 13, 56, 57, 59, 88, 93, and 95. Our writ will issue only if the trial court fails to act in accordance with this memorandum opinion.

JON WEST
Justice

Delivered and filed on the
17th day of July, 2025.