**Larry NERMYR, Relator,**

v.

**Hon. John HYDE, Judge of the 238th District Court, Midland County, Texas, Respondent.**

**No. 08–90–00319–CV.**

Court of Appeals of Texas, El Paso.

Oct. 31, 1990.

Richard D. Davis, Midland, for relator.

John G. Hyde, Midland, Michael K. Swan, Andrews & Kurth, Houston, Franklin H. McCallum, Hinkle, Cox, Eaton, Coffield & Hensley, Gregg Owens, Bullock, Scott & Neisig, Midland, Michael Oja, J.E. Gallegos, Gallegos Law Firm, Santa Fe, N.M., for respondent.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In an original proceeding, Relator has petitioned us for a writ of mandamus ordering the Honorable John Hyde, Judge of the 238th District Court of Midland County, to rescind his order of September 11, 1990 requiring Burlington Northern, Inc., El Paso Natural Gas Company, Southland Royalty Company, Meridian Oil Inc., and El Paso Production Company (collectively "BNI Defendants") to divulge the terms and amount of a settlement agreement entered into by Larry Nermyr ("Nermyr") and the BNI Defendants. We grant the writ in part and deny in part.

The underlying litigation arose when James E. Burr and Ruth Sutton ("Burr/Sutton") filed suit against Doyle Hartman ("Hartman"), the real party in interest in this proceeding, over Hartman's alleged failure to account properly for revenues and expenses from certain oil and gas properties in connection with several settlements concluded between Hartman, the BNI Defendants, and other entities.[1] Hartman answered, counterclaimed against Burr/Sutton and filed a third party complaint against the BNI Defendants, Nermyr and several other parties. As against Nermyr, Hartman sought only a judgment declaring that Nermyr (and the other working interest owners) was not entitled to any part of the proceeds from his settlement with the BNI Defendants. Nermyr then filed a counterclaim against Hartman and a cross-action against the BNI Defendants, alleging breach of fiduciary duties by the BNI Defendants and by Hartman, the latter under a partnership theory, and four causes of action against the BNI Defendants only for fraud, negligence, tortious interference with contract, and conversion. To Nermyr's counterclaim, Hartman denied the existence of any partnership relationship between him and Nermyr and asserted a number of affirmative defenses, not here important.

With the case scheduled to go to trial in late August, 1990, a pretrial hearing was held by the court on August 21, at which time Nermyr's attorney announced that Nermyr and the BNI Defendants had reached a settlement of all claims and causes of action between them for an undisclosed lump sum. Apparently, Nermyr had filed a motion for nonsuit (not included in the mandamus record) prior to the hearing. The court then signed an order of

---

1. As background, it would be helpful to know that Hartman is an oil and gas operator. At one time, he employed Burr as a controller, Sutton as a landman, and Nermyr as an engineer. As part of their compensation, Burr, Sutton and Nermyr became entitled to receive various working interests in leases negotiated by Hartman. In some properties, they became co-working interest owners with Hartman. Hartman maintained control over the leases on their behalf and was to distribute the income and expenses on a pro rata basis to the owners of the working interests. El Paso Natural Gas Company was the purchaser of the gas from most of the properties.

dismissal [2], dismissing, according to the attorneys in the pretrial conference, Nermyr's suit against the BNI Defendants without prejudice and his suit against Hartman with prejudice.

Having learned of the Nermyr/BNI settlement, Hartman filed a motion to discover all terms, including the amount of consideration paid, of the settlement agreement. After jury trial had commenced on August 27, 1990, the court held several hearings on the discovery motion, concluding after an *in camera* inspection that the settlement agreement, which in the meantime had been reduced to writing, by its terms made confidential, and signed by Nermyr and the BNI Defendants on August 31, 1990, was discoverable. It is from the court's order of September 11, 1990 requiring revelation of the entire settlement agreement by October 8, 1990, that the BNI Defendants and Nermyr have brought their respective petitions for writ of mandamus, seeking writs ordering the court either to rescind its discovery order in its entirety (Nermyr) or to modify its order by deleting any reference to the lump sum dollar amount of the settlement (BNI Defendants).

■ In matters involving the admission of evidence and scope of discovery, the trial court has broad discretionary powers. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985). The discretion of the trial court in discovery matters is not limitless, however, and an order requiring or prohibiting discovery is subject to correction by an appellate court in a mandamus action if the relator can show that the order represents a clear abuse of discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A

trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985); *Johnson*, at 917. In an attack on the ruling of a trial court as an abuse of discretion, the relator carries a heavy burden. He must establish, under the circumstances of the particular case, that the trial court was permitted by the facts and the law to make but one decision. *Id.* at 917. In the discovery context, "abuse of discretion" means that the court had no discretion since mandamus will not lie to control the performance of a discretionary act. *Id.* at 917; *Pat Walker & Company, Inc. v. Johnson*, 623 S.W.2d 306, 308 (Tex.1981). An overly broad discovery order may represent an abuse of discretion if it ignores a privileged communication. *Mutter v. Wood*, 744 S.W.2d 600, 601 (Tex.1988).

■ Tex.R.Civ.P. 166b.2.f. provides that "[a] party may obtain discovery of the following:

(2) The existence and contents of any settlement agreement. Information concerning the settlement agreement is not by reason of disclosure admissible in evidence at trial."

Standing by itself, the plain meaning of that Rule seems to be that a party can obtain complete discovery of any settlement agreement, although the fact that it has been disclosed as a result of discovery does not make it admissible in trial. However, the discovery of such agreements is not without limitations. The agreement and its contents must be "relevant to the

**2.** The order of dismissal is defective in that it is impossible to tell from the document included in the record on whose, if anyone's, motion the order was granted and to which suits it pertains. The complete order, including the style but minus the court and number, is as follows: "JAMES E. BURR and RUTH SUTTON Plaintiffs VS. DOYLE HARTMAN, OIL OPERATOR, Defendant and Third Party Plaintiffs, BURLINGTON NORTHERN, INC., MERIDIAN OIL INC., EL PASO NATURAL GAS COMPANY, EL PASO PRODUCTION COMPANY and SOUTHLAND ROYALTY COMPANY, JAMES A. DAVIDSON, JACK FLETCHER, LARRY NERMYR, HAROLD SWAIN and FRANZ WEIZ, Third Party Defendants. (title)*ORDER OF DISMISSAL ON MOTION FOR NONSUIT* (¶) IT IS ORDERED by this Court that this suit be dismissed without prejudice as (sic) Burlington Northern, Inc., Meridian Oil, Inc., El Paso Natural Gas Company, El Paso Production Company, Southland Royalty Company, and Meridian Oil Production, Inc., and dismissed with prejudice as to Doyle Hartman, Oil Operator. (¶) All costs of Court are taxed against the party incurring same. (¶) SIGNED this the *21st* day of *August*, 1990. (Signed) John Hyde, JUDGE PRESIDING."

subject matter in the pending action...." Rule 166b.2.a. A party may not object to such discovery on the ground that the information will be inadmissible at trial "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Rule 166b.2.a. Since relevancy to the subject matter is required in any event, the ground for inadmissibility in trial would likely be something other than irrelevancy.

As can be readily determined from the foregoing, the key to the discoverability of a settlement agreement is "relevancy." *Palo Duro Pipeline Company, Inc. v. Cochran*, 785 S.W.2d 455 (Tex.App.—Houston [14th Dist.] 1990).

It is the contention of the Relators that there is no possible relevancy between the lump sum amount of their settlement and any of the issues in the various causes of action involving Hartman, which remain in the lawsuit and that by ordering the revelation of the agreement, the court abused its discretionary powers. Hartman asserts that the entire settlement agreement is discoverable under Tex.R.Civ.P. 166b.2.f.(2), as did the trial court conclude in its discovery hearings. Hartman claims that the amount of the settlement is both relevant and reasonably calculated to lead to discoverable evidence in that, first, he has pled for a judgment declaring that the various working interest owners, including Nermyr, have no rightful claim to funds received by Hartman in a prior settlement between him and the BNI Defendants; second, in paragraph 8 of that prior settlement agreement, El Paso Natural Gas Company obligated itself to make contract buyout/buydown offers and offers to Nermyr to purchase his interest "that are fairly comparable to those afforded Doyle Hartman" and "will use its best efforts to resolve on a fair and equitable basis all disputes arising under its gas purchase arrangements with other working interest owners in Lea County gas producing wells operated by Doyle Hartman[;]" third, that the sought agreement is or could be a "Mary Carter" settlement agreement; and fourth, that Nermyr had claimed in his petition a partner relationship with Hart-man and had requested an accounting of all sums owed to him from the previous settlement between Hartman and the BNI Defendants.

The burden is on the Relator to bring forward with his petition for mandamus sufficient elements of the trial court record to enable the appellate court to render its decision. *Cameron County v. Hinojosa*, 760 S.W.2d 742 (Tex.App.—Corpus Christi 1988, mand. overr.); *Texas Department of Mental Health and Mental Retardation v. Davis*, 775 S.W.2d 467, 470 (Tex.App.—Austin 1989, mand. overr.). In this case, Relator brought up with the record a copy of the dismissal order. As previously pointed out in a footnote, that order taken at face value without reference to Nermyr's Motion For Nonsuit, the latter not included in the mandamus record, is totally deficient as a dismissal of Nermyr's causes of action against the BNI Defendants and Hartman. Without a valid dismissal order, this Court would be unable to determine from other evidence in the record whether Nermyr's counterclaim against Hartman had been in fact dismissed with prejudice. However, the parties, including Hartman, have treated it both in the trial court discovery hearings and in oral argument before this court as a valid dismissal order as to those causes of action and we shall so consider it.

Keeping in mind that Nermyr's causes of action against Hartman have been dismissed with prejudice and those against the BNI Defendants without prejudice and that his settlement with the BNI Defendants was for a lump sum for a release and dismissal of all causes of action asserted by him against the BNI Defendants, the required relevancy would have to relate to whatever causes of action remain between the parties still in the lawsuit. Hartman's counterclaim against Burr/Sutton and his third party action against the BNI Defendants, Nermyr and the others are still viable. A close reading of Burr/Sutton's petition and Hartman's answer and counterclaim reveals no mention of Nermyr directly or indirectly. Although Burr/Sutton allege in their petition that they "considered

themselves working interest partners and/or joint venturers with Defendant Hartman[,]" there is no allegation in any of the pleadings that would suggest a partnership in common with Nermyr or the other working interest owners. In his third party suit as against Nermyr, Hartman is seeking only a declaratory judgment determining that none of the working interest owners, including Nermyr, are entitled to any of the proceeds from his previous settlement with some of the BNI Defendants. Any claims Nermyr might have had against Hartman by virtue of that settlement are foreclosed by Nermyr's dismissal with prejudice. In his counterclaim, Nermyr's suggested claim of a working interest partnership with Hartman has also been cut off by the dismissal, making moot Hartman's answer.

■ Hartman contends, and the trial judge found, that paragraph 8 of the earlier settlement agreement with El Paso Natural Gas which obligated the latter to make a settlement offer to Nermyr "that [is] fairly comparable to" the settlement with Hartman, provides the necessary relevancy to the Nermyr/BNI settlement, including the lump sum amount of the settlement. By its terms, paragraph 8 required El Paso Natural Gas to make the comparable offer prior to December 31, 1988. We see no relevance between a "fairly comparable" offer required to have been made before that date and the amount of a settlement actually made more than a year and a half later. It is only with respect to Hartman's contention that the settlement agreement might contain or lead to a "Mary Carter" agreement of some kind or may have some other terms and conditions that relate to his remaining claims or defenses that enables us to find a degree of relevancy to support the discovery. Although our inspection of the document reveals nothing of the kind, we conclude that Hartman should have the opportunity to examine the agreement to determine for himself whether there is any relevant, admissible material or information that might lead to the discovery of admissible evidence.

■ The amount of the settlement is another matter. As previously stated, this was a lump sum amount in settlement of a number of causes of action, most of which had no discernable relationship or relevancy to the causes of action or defenses asserted by Hartman. The settlement agreement makes no allocation of the total amount to the various causes of action and we can find no relevance to the claims, defenses or issues remaining in the case nor can we find that revelation of the settlement amount would appear reasonably likely to lead to the discovery of admissible evidence. *Palo Duro Pipeline Company, Inc.*, 785 S.W.2d at 457. We agree with Hartman that *Palo Duro Pipeline* does not stand for the proposition that the amount of cash consideration paid as a result of a confidential settlement between some of the parties to a multi-party lawsuit is never discoverable, but as stated in *Palo Duro Pipeline*, there must be some relevance other than as a "comparative bargaining tool." Beside the confidentiality aspect of the settlement agreement, we note with approval Relator's argument that public policy favors settlement of lawsuits and agree that allowing discovery of the consideration being paid in confidential settlements of this kind would have a chilling effect on their encouragement.

The petition for writ of mandamus brought by Nermyr which seeks to prevent discovery of the entire settlement agreement, including its dollar amount, is conditionally granted as to the amount of the settlement but is denied as to the balance of the settlement agreement. The writ will issue only if the trial court fails to modify its discovery order so that any reference to the cash consideration being paid in the settlement agreement is deleted.