

# NUMBER 13-14-00502-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE DCP MIDSTREAM, L.P.

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Memorandum Opinion by Justice Rodriguez[1]**

Relator, DCP Midstream, L.P. ("DCP"), filed a petition for writ of mandamus on September 8, 2014, seeking to compel the trial court[2] to allow the discovery of a settlement agreement between the plaintiffs and real parties in interest, Leonard May and

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so."); TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions).

[2] The respondent in this original proceeding is the Honorable Robert J. Vargas, the Presiding Judge of County Court at Law No. 1 of Nueces County, Texas.

Catherine May, and settling defendant Apache Corporation ("Apache"). We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

According to the allegations in their fifth amended original petition, the Mays are the owners of a ranch located in Jim Wells, Kleberg, and Nueces Counties.[3] The Mays alleged that Apache, through its oil and gas operations on the ranch, breached a surface use agreement with the Mays and that DCP breached a pipeline easement and surface use agreement with the Mays. The Mays alleged that both Apache and DCP committed tortious acts on the property resulting in surface, subsurface, and groundwater contamination. The Mays' causes of action against both Apache and DCP included breach of contract, negligence, trespass, nuisance, statutory causes of action under the Texas Natural Resources Code, and a request for declaratory relief. DCP filed cross-claims against Apache regarding these same issues.

On July 15, 2013, the Mays entered into a settlement agreement with Apache. Pursuant to that settlement agreement, on July 24, 2013, the trial court granted a joint motion for dismissal filed by the Mays and Apache and dismissed all of the Mays' claims against Apache with prejudice. DCP continued to litigate its cross claims against Apache, alleging that Apache was responsible for all or part of the damages that the Mays sought against DCP. On November 12, 2013, Apache filed a motion for summary judgment on both "no evidence" and traditional grounds against DCP on the basis that no defendant has a right of contribution against any settling person. See TEX. CIV. PRAC. & REM. CODE

---

[3] In their fifth amended original petition, the Mays alleged that Duke Energy Field Services, LP was currently known as DCP Midstream, LLC. We refer to Duke Energy Field Services, LP as "DCP" herein. The Mays also brought suit against TRC Companies, which is not a party to this original proceeding.

2

ANN. § 33.015(d) (West, Westlaw through 2013 3d C.S.) ("No defendant has a right of contribution against any settling person."). On January 15, 2014, the trial court granted Apache's motion for summary judgment as to DCP's cross-claims. Accordingly, the trial court dismissed DCP's cross claims against Apache with prejudice and dismissed Apache from the case.

After the Mays settled with Apache, DCP requested that the Mays and Apache provide DCP with a copy of the settlement agreement pursuant to the requests for disclosure that DCP had propounded on the Mays and Apache. *See* TEX. R. CIV. P. 194.2(h); 192.3(h). Both refused. On November 22, 2013, DCP filed a motion to compel disclosure of the settlement agreement, and on December 5, 2013, DCP filed an amended motion to compel. Apache filed a response to the motion to compel, acknowledging that the amount of the settlement and the scope of the claims released were "likely" discoverable, but contending that the remainder of the settlement agreement was "irrelevant, not calculated to lead to the discovery of admissible evidence at trial, and should be protected as confidential information between [the Mays] and Apache." Apache provided the trial court with (1) an unredacted copy of the settlement agreement; and (2) a redacted version of the settlement agreement in which Apache had "penciled through the portions that it claims are irrelevant to any defense of DCP" for in camera inspection. Apache asserted that it was prohibited from "unilaterally" producing a copy of the settlement agreement because "confidentiality of the [settlement agreement] must [be] maintained by the parties" and because the agreement could not be produced "absent an [o]rder compelling production." According to Apache's response, "[the Mays] objected to production of the Settlement Agreement, and take the positon that its contents would not

3

be relevant to any remaining claim against any remaining defendant." Apache further stated that "it is important to note that [the Mays] were very careful in the crafting of the Agreement so as not to impact or impair in any respect Plaintiffs' claims against DCP." The Mays did not file a response to DCP's motion to compel or amended motion to compel.

The trial court held a hearing on DCP's amended motion to compel on December 12, 2013. On December 17, 2013, the trial court sent an email ruling to the parties that stated as follows:

> Counselors,
>
> Rather than delay this matter with a writ of mandamus, I am inclined to initially rule on the motion to compel disclosure of the settlement agreement in hopes that it may resolve the motions for summary judgment as alluded by [counsel for DCP].
>
> In reading the rule, the cases, and secondary material, there is no absolute right to disclosure of a settlement agreement. Only those portions relevant to the controversy and overlapping issues are discoverable. I don't know who has the burden, but the Movant has presented a strong case, and Apache by its own words concedes entitlement to portions.
>
> I hereby Order the disclosure of those portions of the settlement agreement which outline the claims released and preserved. I do not allow discovery of the amounts of the settlement. I expect the Mays and Apache to jointly redact those portions not relevant to the legal concerns of DCP.

On January 2, 2014, counsel for the Mays sent a redacted version of the settlement agreement to DCP. On February 18, 2014 counsel for DCP sent a letter to the trial court requesting that it issue a signed order on the disclosure of the settlement agreement.

By order signed on February 27, 2014, the trial court granted in part and denied in part DCP's motion to compel. The order reads in relevant part:

4

(1)    Only those portions of the settlement agreement which outline the claims released and preserved are ordered to be disclosed. The parties to that agreement shall jointly redact those portions not relevant to the legal concerns of Defendant DCP.

(2)    Amounts of the settlement shall likewise be redacted jointly by the parties to that agreement.

DCP alleges that it did not receive notice that the trial court had signed this order until August 29, 2014. DCP contends that it called the court the following week to see if the proposed order had been signed, but the court manager indicated it had not. The settlement agreement, as redacted by the Mays and Apache and provided to DCP, appears to comprise twenty-two pages of content, excluding signature blocks, of which approximately twelve pages have been redacted.[4]

This original proceeding ensued. By one issue, DCP contends the trial court erred in refusing to order the disclosure of (a) the settlement amount, and (b) the full contents of the settlement agreement. In connection with this issue, DCP asserts that existing law requires the disclosure of the settlement agreement; the settlement agreement is relevant and necessary for DCP to receive credit for the injuries for which the Mays have already been compensated; the settlement agreement is relevant and necessary for DCP to be able to effectively examine the witnesses at trial; and discovery of the settlement agreement is necessary in view of the numerous overlapping claims and alleged injuries.

---

[4] The record before this Court does not contain the unredacted settlement agreement or the "penciled" version that Apache provided to the trial court. As the party seeking relief, relator bears the burden of demonstrating its entitlement to mandamus relief. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam); *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex. 1992) (orig. proceeding). This burden includes filing a sufficient record in support of the petition. *See Walker*, 827 S.W.2d at 837; *In re Potts*, 399 S.W.3d 685, 686 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding). While the record before the Court is limited insofar as it fails to contain the complete settlement agreement, it is sufficient to review the issues raised in this original proceeding.

DCP further contends that the Mays failed to carry their burden to demonstrate that the settlement agreement is not relevant to the issues remaining in this case.

The Court requested a response from the real parties in interest or any others whose interest would be directly affected by the relief sought. The Mays filed a response to the petition for writ of mandamus. They contend that DCP failed to timely seek relief from the trial court's order so its request for relief is barred by laches and waiver; that the trial court did not abuse its discretion by ordering the "limited disclosure of only relevant portions of a settlement agreement"; that DCP has an adequate remedy by appeal; and that the trial court's order granting summary judgment on DCP's cross-claims against Apache is a "dispositive ruling that there is no evidence that Apache caused or contributed to cause any harm for which DCP is now sued," which, according to the Mays, "clearly shows that the settlement is not relevant to the issues between the Mays and DCP." DCP filed a reply to the response filed by the Mays. Apache did not file a response to the petition for writ of mandamus.

## II. STANDARD OF REVIEW

To be entitled to the extraordinary relief of a writ of mandamus, the relator must show that the trial court abused its discretion and that there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The relator has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam).

A trial court clearly abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails

6

to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by the analysis of principles rather than the application of simple rules that treat cases as categories. *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). We evaluate the benefits and detriments of mandamus review and consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding); *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). Specifically, for example, a party will not have an adequate remedy by appeal: (1) when the appellate court would not be able to cure the trial court's discovery error; (2) where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error; and (3) where the trial court disallows discovery and the missing discovery cannot be made a part of the appellate record or the trial court, after proper request, refuses to make it part of the record. *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992) (orig. proceeding).

### III. LACHES AND WAIVER

The Mays contend that DCP's petition for writ of mandamus is barred by the doctrines of waiver and laches. According to the Mays, DCP received notice of the trial court's ruling on December 17, 2013, but did not seek mandamus relief until September 9, 2014, a delay of more than eight months.

Although mandamus is not an equitable remedy, its issuance is controlled largely by equitable principles. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding); *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 337 (Tex. 1999) (orig. proceeding); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding); *In re Key Equip. Fin. Inc.*, 371 S.W.3d 296, 300 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). One such principle is that equity aids the diligent and not those who slumber on their rights. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d at 676. Thus, delaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay. *Id.; In re SCI Tex. Funeral Servs., Inc.*, 236 S.W.3d 759, 761 (Tex. 2007) (orig. proceeding); *In re Pendragon Transp. LLC*, 423 S.W.3d 537, 540 (Tex. App.—Dallas 2014, orig. proceeding); *In re Higby*, 414 S.W.3d 771, 783 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding [mand. denied]). To invoke the equitable doctrine of laches, a real party in interest ordinarily must show an unreasonable delay by the relator in asserting its rights and a good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989).

We note that laches "is akin to, but distinct from, waiver." *See* 30A C.J.S. *Equity* § 139 (1992). As stated previously, to invoke the equitable doctrine of laches, the moving

8

party ordinarily must show an unreasonable delay by the opposing party in asserting its rights and also the moving party's good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d at 318; *Rogers*, 772 S.W.2d at 80. In contrast, waiver occurs when a party substantially invokes the judicial process to the other party's detriment or prejudice. *See Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014); *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008); *In re ADM Investor Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010) (orig. proceeding). Waiver is primarily a function of intent and requires either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 393–94 (Tex. 2014); *Perry Homes*, 258 S.W.3d at 602–03; *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (per curiam) (orig. proceeding); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam).

In this case, the trial court's email limiting DCP's discovery of the settlement agreement was sent on December 17, 2013, the order denying discovery was signed on February 27, 2014, and DCP did not learn that the order had been signed until August 29, 2014. The petition for writ of mandamus was filed on September 9, 2014. DCP argues that any delay in filing the petition for writ of mandamus was "inadvertent" given that it did not receive notice or a copy of the trial court's order until August, that the signed order never appeared in the "dispositions" section of the trial court's on-line docket, and that DCP moved quickly to file this original proceeding upon learning that the order had been signed. Accordingly, DCP has offered some justification for the delay. *See In re Int'l Profit Assocs., Inc.*, 274 S.W.3d at 676; *In re SCI Tex. Funeral Servs., Inc.*, 236 S.W.3d at 761. Moreover, there is no indication in the record or offered by the Mays that

9

the delay was intentional. *See Crosstex Energy Servs., L.P.*, 430 S.W.3d at 393–94; *Perry Homes*, 258 S.W.3d at 602–03. The Mays have offered no argument or evidence alleging that they were harmed by DCP's delay in filing the petition for writ of mandamus. *See In re Laibe Corp.*, 307 S.W.3d at 318; *Rogers*, 772 S.W.2d at 80. Accordingly, we conclude that the Mays have failed to establish that DCP has lost its right to seek mandamus relief through laches or waiver. We proceed to address the merits of the petition for writ of mandamus.

## IV. SCOPE OF DISCOVERY

The scope of discovery includes any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information is reasonably calculated to lead to the discovery of admissible evidence. TEX. R. CIV. P. 192.3; *In re CSX Corp.*, 124 S.W.3d at 152. Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009); *see In re HEB Grocery Co., L.P.*, 375 S.W.3d 497, 500 (Tex. App.—Corpus Christi 2012, orig. proceeding). Generally, the scope of discovery is within the trial court's discretion. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (per curiam); *In re CSX Corp.*, 124 S.W.3d at 152. However, a party's discovery requests must show a reasonable expectation of obtaining information that will aid in the resolution of the dispute. *In re CSX Corp.*, 124 S.W.3d at 152. Therefore, discovery

10

requests must be reasonably tailored to include only matters relevant to the case. *In re Am. Optical Corp.*, 988 S.W.2d at 713.

## V. SETTLEMENT AGREEMENTS

The discovery of settlement agreements is specifically addressed by the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 192.3(g); *see also In re Univar USA, Inc.*, 311 S.W.3d 175, 179 (Tex. App.—Beaumont 2010, orig. proceeding). Rule 192.3(g) provides: "A party may obtain discovery of the existence and contents of any relevant portions of a settlement agreement. Information concerning a settlement agreement is not by reason of disclosure admissible in evidence at trial." TEX. R. CIV. P. 192.3(g). The rules also specifically address the discovery of settlement agreements through requests for disclosure. *See id.* R. 194.2(h) (allowing a request for disclosure for "any discoverable settlement agreements"). The rules require that a party, within thirty days after being served with a request, file a response to the request of another party for "any settlement agreements described in Rule 192.3(g)[.]" *Id.*; *see* TEX. R. CIV. P. 194.3.

Courts "routinely" order production of settlement agreements that are relevant to a claim or defense of a party. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F.Supp.2d 798, 836–39 (S.D. Tex. 2009). Settlement agreements are relevant and necessary to determine the amount of settlement credits to which a defendant is entitled under the common law's "one satisfaction" rule that a plaintiff should not be compensated twice for the same injury. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d at 836–39; *In re Frank A. Smith Sales*, 32 S.W.3d 871, 874–76 (Tex. App.— Corpus Christi 2000, orig. proceeding). Settlement agreements are also relevant under the Texas Civil Practice and Remedies Code in determining settlement credits. *See* TEX.

11

CIV. PRAC. & REM. CODE ANN. § 33.012(b) ("the court shall [ ] reduce the amount of damages to be recovered by the claimant with respect to a cause of action by the sum of the dollar amounts of all settlements"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d at 836–39; *In re Univar USA, Inc.*, 311 S.W.3d at 179. Further, settlement agreements and offers may be discoverable to demonstrate bias or prejudice of a party or witness or to establish the existence of a promise or agreement made by nonparties to the settled lawsuit. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d at 836–39; *Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 805 (Tex. 1978); *In re Univar USA, Inc.*, 311 S.W.3d at 182; *In re Frank A. Smith Sales*, 32 S.W.3d at 874–76. However, where settlement agreements are not shown to be relevant, they are not discoverable. *See In re BDPJ Houston, LLC*, 420 S.W.3d 309, 313 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding).

## VI. CONFIDENTIALITY PROVISION

The Mays contend that the settlement agreement at issue is subject to a confidentiality provision which precludes them from producing the agreement to DCP. The settlement agreement, as redacted, contains two provisions pertaining to confidentiality. Under the heading "Confidentiality," the agreement provides that the "[c]onfidentiality provisions of the agreement will govern any meeting or mediation and all filings, submissions, and statements undertaken pursuant to this paragraph." In Section IV, titled "Confidentiality and Non-Interference," the agreement provides:

> The terms of settlement, amounts[,] and allocation of the cash payments made pursuant to this Agreement shall be held strictly confidential by the Parties and their attorneys and shall not be disclosed to third parties or otherwise used to their economic advantage or the economic disadvantage of the Released Parties. Disclosure is strictly prohibited

12

without the express written consent of all Parties, other than professional consultants or advisors under confidential relationships. To the extent any of the Parties or their attorneys are or may be legally compelled to disclose any of the terms of this Agreement, that party shall provide prompt notice of such to the other Parties, so that they may, in their discretion, timely object to the disclosure of any or all of such information, seek a protective order (or take other protective measures) to prohibit or restrict the disclosure of any or all such information, or waive the other Parties' duty of nondisclosure. The Parties shall fully cooperate with each other to the extent that any party seeks a protective order or take[s] other protective measures.

The agreement is redacted immediately following this paragraph, so it is unclear whether any other provisions pertinent to confidentiality have been redacted.

Texas has a public policy of encouraging the peaceful resolution of disputes through voluntary settlement and orderly dispute resolution. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.002 (West, Westlaw through 2013 3d C.S.); *Brooks v. Brooks*, 257 S.W.3d 418, 421 (Tex. App.—Fort Worth 2008, pet. denied); *Wright v. Sydow*, 173 S.W.3d 534, 551 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). "Proponents of mediation stress that confidentiality is critical to the success of the process." *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 797 (Tex. App.—Dallas 2002, pet. denied). However, the fact that a settlement agreement contains a confidentiality provision does not render the agreement or its contents undiscoverable as a matter of law. *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 623 F. Supp. 2d at 838; *In re BDPJ Houston, LLC*, 420 S.W.3d at 314; *In re Cont'l Ins. Co.*, 994 S.W.2d 423, 423 (Tex. App.—Waco, orig. proceeding), *mand. conditionally granted on other grounds sub nom. In re Union Pac. Res. Co.*, 22 S.W.3d 338 (Tex. 1999) (orig. proceeding) (per curiam); *cf. Scott v. McIlhany*, 798 S.W.2d 556, 559–60 (Tex. 1990) (discussing the inability of litigants to use private agreements to block discovery of information and testimony sought by third

13

parties).  Accordingly, the confidentiality provisions of the agreement do not insulate the settlement agreement from discovery if the discovery is otherwise warranted.

## VII. BURDEN

DCP contends that the real parties in interest had the burden to plead and prove the basis for any objections to disclosure of the settlement agreement and they failed to meet that burden.  It is undisputed that DCP served the Mays and Apache with a proper request for disclosure for the settlement agreement.  In this regard, DCP alleges that, although Apache filed a response to DCP's motion to compel, the Mays did not.

This Court and others have placed the burden of proof regarding relevance, or lack thereof, on the party seeking to avoid discovery.  *See, e.g., In re Frank A. Smith Sales, Inc.*, 32 S.W.3d at 874 ("Generally, the party resisting discovery has the burden to plead and prove the basis of its objection."); *Valley Forge Ins. Co. v. Jones*, 733 S.W.2d 319, 321 (Tex. App.—Texarkana 1987, orig. proceeding) (holding that, as a general rule, the burden of pleading and proving the requested evidence is not relevant falls upon the party seeking to prevent discovery).  Evidence may not be necessary to sustain this burden. *See In re Union Pac. Res. Co.*, 22 S.W.3d 338, 341 (Tex. 1999) (per curiam) (orig. proceeding).

The Texas Rules of Civil Procedure expressly prohibit objections to requests for disclosure. *See* TEX. R. CIV. P. 194.5; *In re Univar USA, Inc.*, 311 S.W.3d at 180.  Instead, in "those extremely rare cases when information ordinarily discoverable should be protected," a party is allowed to file a motion for a protective order pursuant to Rule 192.6. *See* TEX. R. CIV. P. 194 cmt. 1; *see also id.* R. 192.6 (explaining the procedure to obtain "an order protecting that person from the discovery sought").  Neither the Mays nor

14

Apache filed a motion for protection in this case. Through its response, Apache objected to the request to supplement its disclosures. Apache's objections to DCP's motion to compel were insufficient to establish that the settlement agreement, that is "information ordinarily discoverable," should be protected in this cause. *See id.* R. 194, 194.5. Moreover, insofar as the Mays failed to file any response to DCP's motion to compel in the trial court, the Mays also failed to establish that the settlement agreement was not relevant and thus discoverable. Based on the foregoing, we examine whether the trial court acted within its discretion in denying discovery of the full contents of the settlement agreement.

## VIII. ANALYSIS

The order at issue in this case contained two disparate provisions regarding discovery of the settlement agreement. First, as stated previously, the trial court's order required the redaction of the amount of the settlement that Apache paid the Mays. Second, the trial court's order required the parties to disclose "[o]nly those portions of the settlement agreement which outline the claims released and preserved" and directed the parties to that agreement to "jointly redact those portions not relevant to the legal concerns of Defendant DCP." We initially address the aspect of the trial court's order prohibiting disclosure of the amount of the settlement between Apache and the Mays.

DCP contends that the amount of the settlement between Apache and the Mays is relevant regarding the application of the "one satisfaction" rule. "The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991); *see also Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). Under this rule, a plaintiff is

15

entitled to one recovery for damages suffered when multiple defendants commit the same act as well as when multiple defendants commit technically different acts resulting in a single injury. *Casteel*, 22 S.W.3d at 390. The application of the rule is not limited to tort claims, and whether the rule may be applied depends not on the cause of action asserted, but rather the injury sustained. *Osborne v. Jauregui, Inc.*, 252 S.W.3d 70, 75 (Tex. App.—Austin 2008, pet. denied).

DCP also contends that the settlement amount is relevant to any potential settlement credit that it might receive as a result of the settlement. Chapter 33 of the Texas Civil Practice and Remedies Code applies to "any cause of action based on tort in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought." TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1) (West, Westlaw through 2013 3d C.S.); *see Dalworth Restoration, Inc. v. Rife-Marshall*, 433 S.W.3d 773, 780–81 (Tex. App.—Fort Worth 2014, pet. dism'd w.o.j.). A "defendant" in the chapter is any party (like appellant) from "whom, at the time of the submission of the case to the trier of fact, a claimant seeks recovery of damages." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(2). A "settling person" is someone "who has, at any time, paid or promised to pay money or anything of monetary value to a claimant in consideration of potential liability with respect to the . . . harm for which recovery of damages is sought." *Id.* § 33.011(5). Section 33.012 contemplates that a credit should be given when a plaintiff has benefited from a settlement that covers the same harm from which the plaintiff seeks recovery against a nonsettling defendant. *Dalworth Restoration, Inc.*, 433 S.W.3d at 780–81; *Galle, Inc. v. Pool*, 262 S.W.3d 564, 571 (Tex. App.—Austin 2008, pet. denied); *see also Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 926 (Tex. 1998)

16

("When there is a settlement covering some or all of the damages awarded in the judgment, section 33.012 requires the trial court to reduce the judgment accordingly.").

In considering DCP's contentions regarding the potential relevance of the settlement amount, we examine whether or not the Mays essentially suffered a single injury or the same harm as a result of Apache and DCP's conduct. The Mays deny any relevance and contend that the "claims and injuries are different."

The Mays argue that the settlement agreement is irrelevant because the trial court made a "dispositive ruling that is no evidence that Apache caused or contributed to any harm for which DCP is now sued." The trial court granted Apache's motion for summary judgment on DCP's cross claims as a matter of law based on section 33.015(d) of the Texas Civil Practice and Remedies Code, which provides that no defendant has a right of contribution against any settling party. See TEX. CIV. PRAC. & REM. CODE ANN. § 33.015(d). The trial court concluded that DCP did not have a right of contribution against Apache, but this conclusion does not implicate whether or not any of Apache's actions resulted in the same injuries for which DCP is now being sued. That issue was not litigated. Moreover, the Mays' argument conflates contribution with the application of the one satisfaction rule and the issue of potential settlement credits. While these issues are related, they are distinct concepts and apply in different circumstances.

The Mays' fifth amended original petition includes numerous causes of action and factual allegations that are virtually identical as against both DCP and Apache. The petition alleges that both Apache and DCP "committed tortious acts on the property which [have] resulted in contamination to the [Mays' property]" and that both were "responsible for contamination of the Ranch while the Plaintiffs were owners of the property." The

17

petition alleges identical causes of action for negligence against Apache, which they alleged failed to act as a reasonable and prudent operator, and DCP, which they alleged failed to act as a reasonable and prudent gatherer of oil and gas:

> [Apache/DCP] has a duty to Plaintiffs not to negligently or intentionally damage the surface soils, the subsurface strata, surface waters and the underlying groundwater incident to oil and gas production, storage and transportation operations on and under the Ranch. Reasonable use of the property does <u>not</u> include [Apache's/DCP's] right to negligently or intentionally allow leaks, discharges, spills or releases of hydrocarbons, produced fluids and other substances or failure to take reasonable steps to prevent such leaks, discharges, spills or releases. Likewise, reasonable use of the property does <u>not</u> include an intentional or negligent refusal to clean up or restore the areas impacted by hydrocarbon, heavy metal, chloride, NORM and other contamination at the Ranch. Such breaches were and are a legal or contributing cause of injuries to and threaten to cause additional irreparable injuries and damage to Plaintiffs' real property.

> [Apache/DCP] had a duty to exercise ordinary care to prevent and protect injuries to Plaintiffs' real property, especially from the threat of contamination to groundwater resources resulting from releases of hydrocarbons, produced fluids and other substances. [Apache/DCP] also had the duty to exercise ordinary care to perform reasonable and necessary response actions required in the event of such releases.

> [Apache/DCP] breached these duties and created conditions that have caused and now continue to cause irreparable injuries to portions of the surface, subsurface and groundwater at the Ranch. [Apache/DCP] was negligent in exercising these duties, proximately causing significant damages.

The Mays' causes of action for trespass, nuisance, and violations of the Texas Natural Resources Code against both Apache and DCP are also identical to each other.

The petition also alleges breach of contract causes of action against Apache, regarding its surface use agreement, and against DCP, regarding its pipeline easement and surface use agreement. While some of the allegations regarding breach of contract are specific to each defendant, most of the breach of contract allegations against Apache

18

and DCP are remarkably similar. For instance, the Mays allege that Apache breached its contract because it failed to restore the surface of the property to its original condition and failed to remove caliche, debris, foreign material, waste materials, junk materials used with respect to development of the property, and abandoned equipment from the property. The Mays alleged that DCP breached its contract because it failed to remove all pipelines, equipment and facilities, property, and other debris from the property. In further connection with the Mays' causes of action against these parties for breach of the respective contracts, the Mays alleged that both Apache and DCP failed to perform remedial work in connection with the contamination.

The Mays' petition further seeks declaratory relief collectively as against both Apache and DCP, including declarations that they "are liable for all of the costs, plus interest, of past, present and future remedial and response costs incurred by Plaintiffs . . . reasonably necessary to address the releases or threatened releases of hazardous substances and solid and hazardous wastes proximately in connection with [their] activities on the property." The Mays petition further seeks damages against all defendants collectively.

Based on the foregoing analysis, we conclude that the claims and injuries alleged against both DCP and Apache were similar, if not largely identical, and thus the amount of the settlement is relevant and necessary to determine the amount of settlement credits to which DCP may potentially be entitled under the "one satisfaction" rule that a plaintiff should not be compensated twice for the same injury.[5] *See In re Enron Corp. Sec.,*

---

[5] We note that several cases that deny the discovery of settlement amounts are distinguishable from the instant case, either insofar as they pertained to settlement amounts in separate lawsuits, the asserted arguments regarding relevance were different, or the cases were decided prior to the amendments

19

*Derivative & ERISA Litig.*, 623 F. Supp. 2d at 836–39; *In re Frank A. Smith Sales*, 32 S.W.3d at 874–76.  In this regard, the amount of the settlement is also relevant under the Texas Civil Practice and Remedies Code to determine whether DCP is entitled to a potential settlement credit.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d at 836–39; *In re Univar USA, Inc.*, 311 S.W.3d at 179.  We conclude that the trial court abused its discretion in denying discovery of the settlement amount and, accordingly, sustain that part of DCP's sole issue regarding discovery of the settlement amount.

We next address the trial court's order insofar as it allowed discovery of "the claims released and preserved" but denied the discovery of all other provisions of the settlement agreement.  DCP contends that the settlement agreement may be relevant and necessary to issues pertaining to bias or credibility of the witnesses, its ability to effectively examine the witnesses at trial, and to receive a fair trial.  The Mays contend, in contrast, that the settlement agreement is irrelevant because Texas Rule of Evidence 408, allowing for the admission of evidence to show bias or prejudice, is a narrow exception to the general rule regarding the exclusion of evidence, and DCP has failed to establish that this case falls within that "narrow" exception.  *See* TEX. R. EVID. 408.

---

to the rules of civil procedure incorporating requests for disclosure.  *See, e.g., Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 649 (Tex. 1995) (orig. proceeding) (refusing discovery of amounts paid to settle claims in other lawsuits where the discovery was requested for the purpose of assisting "a party in evaluating a case, for trial, or facilitating settlement"); *Burlington N., Inc. v. Hyde*, 799 S.W.2d 477, 481 (Tex. App.—El Paso 1990, orig. proceeding) (denying discovery of a settlement amount where there was "no discernible relationship or relevancy to the causes of action or defenses asserted" by the requesting party); *Nermyr v. Hyde*, 799 S.W.2d 472, 475 (Tex. App.—El Paso 1990, orig. proceeding) (same and holding that the amount was not discoverable where there was no relevance other than as a "comparative bargaining tool"); *Palo Duro Pipeline Co. v. Cochran*, 785 S.W.2d 455, 457 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding) (denying discovery of cash amounts contained settlement agreements but allowing discovery of the remaining portions of the settlement agreements).  The changes to the Texas Rules of Civil Procedure—incorporating requests for disclosures—became effective January 1, 1999.  TEX. R. CIV. P. 192.3(g) (amended Jan. 1, 1999); TEX. R. CIV. P. 194 (amended Jan. 1, 1999).

Texas Rule of Evidence 408 concerns the admissibility, not discoverability, of settlement agreements. *See id.* The scope of discovery is much broader than the scope of admissible evidence. *In re Exmark Mfg. Co.*, 299 S.W.3d 519, 528 (Tex. App.—Corpus Christi 2009, orig. proceeding [mand. dism'd]) (discussing *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 138–39 (Tex. 2004)). The "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" tests are "liberally construed" to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial, and "it does not matter that the information sought may be inadmissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence." *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990) (orig. proceeding); *see also Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993). Fundamentally, the scope of discovery is obviously much broader than the scope of admissible evidence. *See In re Exmark Mfg. Co., Inc.*, 299 S.W.3d at 528. In this case, the Mays have conflated the standards for the discovery of information and the admissibility of evidence. Accordingly, Texas Rule of Evidence 408 does not control our analysis.

The rules of civil procedure allow discovery of the "existence and contents of any relevant portions of a settlement agreement." *See* TEX. R. CIV. P. 192.3(g). We conclude that those portions of the settlement agreement that are relevant to the existence or nonexistence of potential witness bias, such as those portions that reflect agreements to provide testimony, to provide cooperation, or to not cooperate with the nonsettling defendant, as a consideration for the settlement are relevant and are reasonably calculated to lead to the discovery of relevant impeachment or bias evidence. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d at 836–39; *Bristol–Myers*

21

*Co.*, 561 S.W.2d at 805; *In re Univar USA, Inc.*, 311 S.W.3d at 182; *In re Frank A. Smith Sales*, 32 S.W.3d at 874–76.

In so holding, we are cognizant that the Mays have contended that we are required to imply all necessary findings of fact to support the trial court's decision denying discovery because the trial court reviewed the full settlement agreement, and a redacted copy, and ordered the production of the redacted settlement agreement "which it determined to be the relevant portions of the agreement." We do not agree. According to the record filed in this case, the trial court directed the disclosure of "[o]nly those portions of the settlement agreement which outline the claims released and preserved," and directed the "parties to that agreement" to "jointly redact those portions not relevant to the legal concerns of Defendant DCP." The trial court did not exercise its discretion in redacting the settlement agreement; rather it instructed the Mays and Apache to determine the "relevant" portions of the settlement agreement. This is akin to putting the fox in charge of the henhouse. The parties to the settlement have incentives to minimize the settlement's effects on the non-settling defendant. *See In re Univar USA, Inc.*, 311 S.W.3d at 181.

Based on the foregoing, we conclude that the trial court abused its discretion in denying discovery of the relevant portions of the settlement agreement and, accordingly, sustain the remainder of relator's sole issue in this original proceeding.

## IX. ADEQUACY OF REMEDY BY APPEAL

The Mays contend that DCP possesses an adequate remedy by appeal, and thus mandamus should be denied. Appeal is an inadequate remedy when the appellate court would not be able to cure the trial court's discovery error. *In re Dana Corp.*, 138 S.W.3d

22

298, 301 (Tex. 2004) (per curiam) (orig. proceeding); *In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003) (orig. proceeding); *In re Platinum Energy Solutions, Inc.*, 420 S.W.3d 342, 349 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). "Appeal from a trial court's discovery order is not adequate if: (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record." *In re Ford Motor Co.*, 988 S.W.2d at 721; *see In re Eurecat US, Inc.*, 425 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding).

In the instant case, DCP lacks an adequate remedy by appeal. *See In re Univar USA, Inc.*, 311 S.W.3d at 181; *In re Frank A. Smith Sales, Inc.*, 32 S.W.3d at 875. DCP cannot present its "one satisfaction" argument to the trial court, evaluate whether it is entitled to a settlement credit, or evaluate the likely effect of any settlement on its potential liability in the forthcoming trial without discovery of the settlement agreements. *See In re Univar USA, Inc.*, 311 S.W.3d at 181; *In re Frank A. Smith Sales, Inc.*, 32 S.W.3d at 875. Moreover, allowing the trial to proceed without DCP's knowledge regarding whether the settlement agreement potentially affects the prospective testimony at trial, or otherwise affects its substantive rights at trial, could result in a fundamentally skewed trial. *See id.* Thus, mandamus in this matter will preserve important substantive and procedural rights from impairment or loss. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. Moreover, a remedy by appeal is inadequate when the trial court disallows discovery and the missing discovery cannot be made part of the appellate record. *In re Frank A. Smith Sales, Inc.*, 32 S.W.3d at 875. Accordingly, we hold that DCP lacks an adequate remedy by appeal, thus mandamus review is appropriate.

## X. Conclusion

The purpose of discovery is to allow the parties to obtain "the fullest knowledge of issues and facts prior to trial." *West v. Solito*, 563 S.W.2d 240, 243 (Tex. 1978). We interpret the discovery rules "so that parties can make realistic assessments of their respective positions in order to facilitate settlements and prevent trial by ambush." *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989); *Lopez v. La Madeleine of Tex., Inc.*, 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006, no pet.). "Only in certain narrow circumstances is it appropriate to obstruct the search for truth by denying discovery." *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991); *see In re Exmark Mfg. Co., Inc.*, 299 S.W.3d at 533. This is particularly true with regard to settlement agreements: "a settlement, procured in darkness is neither just, fair, equitable, or impartial, and appears to be inconsistent with the objective of the Texas Rules of Civil Procedure." *In re Univar USA, Inc.*, 311 S.W.3d at 181.

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that DCP has met its burden to obtain mandamus relief. Based on the facts and arguments presented in this case, where the settlement agreement is not privileged and where it is relevant to the subject of the lawsuit, and where the real parties in interest have failed to file a motion for protective order, we conclude that DCP, as the non-settling defendant, should have the opportunity to examine the agreement. *See In re Univar USA, Inc.*, 311 S.W.3d at 180–81; *Burlington N., Inc. v. Hyde*, 799 S.W.2d 477, 481 (Tex. App.—El Paso 1990, orig. proceeding); *Nermyr v. Hyde*, 799 S.W.2d 472, 475 (Tex. App.—El Paso 1990, orig.

24

proceeding). In so holding, we do not address the merits of the "one satisfaction rule," any potential settlement credit, or the admissibility of the settlement agreement at trial.

The petition for writ of mandamus is conditionally granted. We direct the trial court to withdraw its order of February 27, 2014, granting in part and denying in part DCP's motion to compel and to enter an appropriate order allowing DCP discovery of the settlement agreement in good and sufficient time for DCP to examine the settlement agreement prior to the trial of this case. The trial court shall take appropriate measures to ensure that the settling parties' right to confidentiality is protected, through protective order or otherwise, while allowing DCP the relevant discovery.[6] We are confident that the trial court will comply and the writ will issue only in the event that it does not. *See* TEX. R. APP. P. 52.8(d).

NELDA V. RODRIGUEZ
Justice

Justice Benavides, dissenting without separate opinion, would deny relief. *See* TEX. R. APP. P. 52.8(d).

Delivered and filed the 7th
day of October, 2014.

---

[6] "In those extremely rare cases when information ordinarily discoverable should be protected, such as when revealing a person's residence might result in harm to the person, a party may move for protection." TEX. R. CIV. P. 194 cmt.1. In this case, the real parties did not assert that any portion of the settlement agreements were protected by any specific privileges or move for protective order, so it is unlikely that there will be any issues raised in this regard.